Michael ZAGARINO, Petitioner,

v.

Theodore WEST, Warden, Brooklyn House
of Detention for Men, Respondent.

No. 76 C 1214.

United States District Court,
E. D. New York.

Sept. 30, 1976.

Allen E. Burns, Legal Aid Society, New York City, for petitioner.

Eugene Gold, Dist. Atty., Kings County (Alan D. Rubinstein, Asst. Dist. Atty., Brooklyn, N.Y., of counsel), for respondent.

Memorandum of Decision and Order

MISHLER, Chief Judge.

The petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. §§ 2241 and 2254. He is currently serving a one-year sentence imposed after a plea of guilty on April 16, 1974, to attempted criminal possession of stolen property in the first degree, N.Y. Penal Law §§ 110.00 and 165.50. The Appellate Division affirmed the judgment without opinion on December 17, 1975, 50 A.D.2d 850, 377 N.Y.S.2d 347. Leave to appeal to the New York Court of Appeals was denied on February 9, 1976. In his application for a writ of habeas corpus, petitioner claims that his identification as a suspect in an investigation of a car theft conspiracy, and the subsequent gathering of evidence against him, was the result of the execution of an illegal wiretap. Consequently, petitioner asserts, his incarceration constitutes a "violation of his rights under the fourth and fourteenth amendments of the United States Constitution."

The police investigation of the car theft conspiracy began when a confidential informer revealed that a Marvin Nadbourne and "other unknown individuals" were stealing automobiles, altering the appearance of the stolen vehicles and then selling the cars. Surveillance of Nadbourne corroborated the informer's information, as did the monitoring, with the informer's consent, of three telephone conversations between the informer and Nadbourne. On September 22, 1971, Judge Irwin Shapiro, Associate Justice of the Appellate Division, Second Department, signed an order authorizing the execution of a wiretap on Nadbourne's phone. One month later, the Nadbourne warrant was extended until November 21, 1971. During this period, the name of Edward Morin, co-defendant with petitioner, was mentioned repeatedly in Nadbourne's phone conversations about the car theft ring. On November 30, 1971, Judge Shapiro authorized a wiretap of Morin's telephone. Two weeks later, on December 13th, the petitioner was overheard discussing the car thefts with Morin. The petitioner was indicted subsequently on numerous charges stemming from his involvement in the car theft ring. Prior to entering a guilty plea, the petitioner unsuccessfully moved to controvert the Morin warrant.

The petitioner now raises the same challenge to the Morin warrant that he made in the state courts, specifically, that the affidavits supporting the application for the Morin warrant were deficient. The affidavits disclosed the contents of conversations intercepted pursuant to the Nadbourne wiretap, including conversations between Morin and Nadbourne about the car thefts. The supporting affidavit of an investigating officer also stated:

> While your deponent has engaged in and will seek to continue to engage in undercover activities and to utilize other normal investigative techniques, it is your deponent's belief that normal investive [sic] procedures will not be sufficient to obtain all of the necessary evidence of the commission of the crimes being engaged in by the aforesaid parties and further, that without the aid of an Eavesdropping Warrant, your deponent would not be able to determine the identities of all the members of those directly involved in this illegal conspiracy. Furthermore, normal investigative procedures will place me in a position of increased physical danger, all of which will, in my opinion, make it unlikely that this investigation and any subsequent prosecution will succeed.

(Brief for petitioner, Exhibit E).

The petitioner claims that the Morin warrant was issued on an inadequate showing that normal investigative procedures

had already failed or would fail to achieve the objectives of the police. Under 18 U.S.C. §§ 2518(1)(c) and (3)(c), petitioner points out, an application for an eavesdropping warrant must contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous," and that the judge granting the application must determine that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous."[1] The petitioner contends that the District Attorney's application for the Morin warrant failed to demonstrate the requisite exigent circumstances and that the pretrial hearing testimony suggested that conventional investigation methods had met with some success.

The petitioner raises significant questions concerning the validity of the Morin warrant. However, subsequent to the filing of the petition for habeas corpus, the Supreme Court decided *Stone v. Powell,* —— U.S. ——, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1967), which held that

> where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

96 S.Ct. at 3052 (footnote omitted).

If *Stone v. Powell* comprehends a federal habeas claim of illegal wiretapping, then this court's habeas review is limited to the determination of whether the petitioner had a full and fair opportunity in the state courts to litigate his objections to the wiretapping. As far as we know, no court has decided this question in the brief period since the decision in *Stone v. Powell.* We turn first to an examination of the interplay between the fourth amendment's prohibition against illegal searches and seizures, the exclusionary rule, and the federal wiretapping statute, 18 U.S.C. § 2510 *et seq.*

The Supreme Court first considered the status of wiretapping in *Olmstead v. United States,* 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928). There defendants objected to introduction at trial of evidence of private telephone conversations obtained by tapping telephone lines between the defendants' residences and business offices. The Court held that the wiretapping of telephone wires and the introduction into evidence of intercepted conversations did not violate the fourth amendment prohibition against unreasonable searches and seizures, since there had been no invasion of property or seizure of tangible items. *Id.* at 464, 48 S.Ct. at 568.

Subsequently, Congress enacted § 605 of the Federal Communications Act, which provided that

> no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person.

47 U.S.C. § 605. In *Nardone v. United States,* 302 U.S. 379, 58 S.Ct. 275, 82 L.Ed. 314 (1937), this statute was construed to bar the use at trial of evidence obtained in violation of its provisions. *Nardone,* however, was predicated on the Court's supervisory powers over federal courts, not on constitutional grounds. *See* Senate Report Accompanying the Omnibus Crime Control and Safe Streets Act of 1968, 1968 U.S.Code Cong. & Admin.News pp. 2112, 2154. Later Supreme Court decisions dealt with standing to object to the use of wiretap evidence, *Goldstein v. United States,* 316 U.S. 114, 62

---

1. Sections 700.15(4) and 700.20(2)(d) of the New York Criminal Procedure Law parallel the federal exigency provisions, requiring a "full and complete statement of facts establishing that normal investigative procedures" were fruitless or that they are unlikely to be successful if tried. If *arguendo* the New York provisions are more stringent than the federal exigency requirements, a violation of the New York statute nonetheless is not cognizable on a § 2254 motion. *See Rose v. Hodges,* 423 U.S. 19, 21, 96 S.Ct. 175, 177, 46 L.Ed.2d 162 (1975), *citing Townsend v. Sain,* 372 U.S. 293, 312, 83 S.Ct. 745, 756, 9 L.Ed.2d 770 (1963).

S.Ct. 1000, 86 L.Ed. 1312 (1942); "spike mikes," *Silverman v. United States*, 365 U.S. 505, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961); and the use of "wire" recorders to record the statements of a suspect, *Lopez v. United States*, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963). *See On Lee v. United States*, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270 (1952).

It was not until *Berger v. New York*, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967), and *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), that firm standards for constitutional electronic surveillance were established by the Supreme Court. *See* 1968 U.S.Code Cong. & Admin.News at p. 2156. The *Berger* Court, overruling *sub silentio* the *Olmstead* decision, 388 U.S. at 64, 87 S.Ct. at 1886 (Douglas, J., concurring), held that the New York eavesdropping statute violated the fourth amendment by allowing "trespassory invasions" of constitutionally protected areas. In *Katz*, the Court sounded the final death knell for the *Olmstead* case. The basis for the petitioner's claim in *Katz* was the introduction in evidence of the petitioner's telephone conversations, recorded by an electronic device attached to the outside of a public telephone booth. The Court overturned the conviction, ruling that

> [t]he Government's activities in electronically listening to and recording the petitioner's words violated the privacy upon

which he justifiably relied while using the telephone booth and thus constituted a "search and seizure" within the meaning of the Fourth Amendment.

389 U.S. at 353, 88 S.Ct. at 512. Since the "search" in *Katz* was conducted without prior approval by judge or magistrate and since none of the recognized circumstances justifying a warrantless search were present, the eavesdropping was *per se* unreasonable under the fourth amendment.

In 1968, Congress passed Title III of the Omnibus Crime Control and Safe Streets Act. Title III was drafted to meet the standards for electronic surveillance delineated by the *Katz* and *Berger* opinions. 1968 U.S.Code Cong. & Admin.News at p. 2113. The legislation creates federal wiretapping procedures that "also operate as national standards which only permit the states 'to adopt *more* restrictive legislation, or no legislation at all, but *not less* restrictive legislation.' " *United States v. Capra*, 501 F.2d 267, 276 (2d Cir. 1974), *cert. denied,* 420 U.S. 990, 95 S.Ct. 1424, 43 L.Ed.2d 670 (1975), *quoting* 1968 U.S.Code Cong. & Admin. News at p. 2187; *Kinoy v. Mitchell*, 331 F.Supp. 379, 382 (S.D.N.Y.1971). Moreover, Congress, in codifying the *Berger* and *Katz* decisions, allowed for the suppression of evidence derived from wire or oral communications intercepted in violation of the provisions of Title III. 18 U.S.C. § 2518(10)(a). Significantly, although § 2518(10)(a)[2] ap-

---

**2.** Section 2518(10)(a) provides in pertinent part:

> (10)(a) Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom, on the grounds that—
> (i) the communication was unlawfully intercepted;
> (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or
> (iii) the interception was not made in conformity with the order of authorization or approval.
> Such motion shall be made before the trial, hearing, or proceeding unless there was no

> opportunity to make such motion or the person was not aware of the grounds of the motion. If the motion is granted, the contents of the intercepted wire or oral communication, or evidence derived therefrom, shall be treated as having been obtained in violation of this chapter.

Section 2515 provides:

> Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter.

plies to suppress evidence directly or indirectly obtained in violation of the wiretap statute, *see Nardone v. United States, supra; Nardone v. United States*, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939), Congress never intended "to press the scope of the suppression role beyond present search and seizure law." 1968 U.S.Code Cong. & Admin.News at p. 2185, *quoted in United States v. Giordano*, 416 U.S. 505, 528 n. 17, 94 S.Ct. 1820, 1833 n. 17, 40 L.Ed.2d 341 (1974).

Thus, while electronic surveillance is a "search and seizure" within the meaning of the fourth amendment, the consequences of a violation of the constitutional standards incorporated into the federal wiretapping statute depend on the judicial view of the role of suppression in search and seizure law. It follows that, since the wiretap statute does not provide for collateral review of violations of either the state or federal wiretap laws, the scope of habeas review on a claim of admission or use of illegal wiretap evidence similarly depends on the current view of the usefulness of extending the exclusionary rule to collateral review of fourth amendment claims. The critical question then is whether the rationale of *Stone v. Powell*, which limits habeas corpus review of claims of illegal searches and seizures, applies to collateral review of violations of the federal wiretapping statute.

*Stone v. Powell* involved two disparate cases. In Powell's case, evidence of his complicity in a murder had been obtained pursuant to his arrest for violation of a local vagrancy ordinance. The state courts upheld the conviction, but, on appeal from the federal district court's denial of Powell's petition for a writ of habeas corpus, the Ninth Circuit reversed, concluding that the vagrancy statute was unconstitutionally vague, and that the evidence seized pursuant to Powell's illegal arrest should be suppressed in the interest of "deterring legisla-

tors from enacting such statutes." 507 F.2d 93, 98 (9th Cir. 1974). In *Wolff v. Rice*, the companion case to *Stone v. Powell*, the defendant's murder conviction was based, in part, on evidence seized under a search warrant authorizing police to search Rice's home for explosives and illegal weapons. The state courts affirmed the conviction, but a federal district court granted the writ of habeas corpus on the grounds that the affidavit supporting the search warrant was defective and that no exigent circumstances existed to justify a warrantless search. The Court of Appeals for the Eighth Circuit affirmed. 513 F.2d 1280 (8th Cir. 1975).

Justice Powell's opinion for the majority in *Stone v. Powell* balanced the "utility of the exclusionary rule against the costs of extending it to collateral review of Fourth Amendment claims." 96 S.Ct. at 3049. The Court's appraisal of the exclusionary rule emphasized first that, at least where the state petitioner alleges an illegal search and seizure, the evidence sought to be excluded is "typically reliable" and quite often represents the only probative information on the issue of guilt or innocence. As a result, exclusion of such evidence has a drastic effect on the truthfinding process and confers a disproportionate reward on the defendant. *Id.* at 3050; *See United States v. Burke*, 517 F.2d 377, 386 (2d Cir. 1975), *quoting United States v. Dunnings*, 425 F.2d 836, 840 (2d Cir. 1969), *cert. denied*, 397 U.S. 1002, 90 S.Ct. 1149, 25 L.Ed.2d 412 (1970).

Second, the deterrent efficacy [3] of the exclusionary rule, in the view of the *Powell* Court, diminishes in direct proportion to the remoteness of the reviewing court that decides that an illegal search and seizure, in fact, did take place. Thus, while exclusion of illegally seized evidence at the trial or immediate appellate level discourages fourth amendment violations, there is little

---

**3.** The *Powell* Court reaffirmed that the "primary justification for the exclusionary rule . . . is the deterrence of police conduct that violates Fourth Amendment rights." 96 S.Ct. at 3048. Whatever once may have been the status of the "judicial integrity" rationale of

the exclusionary rule, *see Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), that justification is now a dead doctrine insofar as the present Court is concerned. *See United States v. Calandra*, 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561 (1974).

deterrent value in allowing a federal court in a collateral proceeding to overturn a state conviction when two or more tiers of state courts have already rejected the petitioner's search and seizure claim and when the collateral review occurs years after the claimed police illegality.

The view that the deterrence of Fourth Amendment violations would be furthered rests on the dubious assumption that law enforcement authorities would fear that federal habeas review might reveal flaws in a search or seizure that went undetected at trial and on appeal. Even if one rationally could assume that some additional incremental deterrent effect would be presented in isolated cases, the resulting advance of the legitimate goal of furthering Fourth Amendment rights would be outweighed by the acknowledged costs to other values vital to a rational system of criminal justice.

96 S.Ct. at 3051–52 (footnotes omitted).

These considerations apply with equal force to review of a habeas claim predicated on violations of the federal wiretapping laws. The evidence gathered from electronic surveillance is directly probative on the issue of a defendant's guilt; indeed, in reconstructing past events, a recorded conversation often provides information for the triers of fact that is far more accurate than the circumstantial evidence gathered, for example, by seizure of contraband items from a building owned by a defendant. *See generally* 1968 U.S.Code Cong. & Admin. News at p. 2159. Frequently, evidence gained from wiretaps alone "establishes beyond virtually any shadow of a doubt that the defendant is guilty," *Kaufman v. United States*, 394 U.S. 217, 237, 89 S.Ct. 1068, 1079, 22 L.Ed.2d 227 (1969) (Black, J., dissenting). Thus, application of the exclusionary rule to claims of illegal electronic surveillance has the same result as the application of the rule to ordinary searches

and seizures. In both situations, suppression of otherwise probative evidence "deflects the truthfinding process and often frees the guilty." *Stone v. Powell, supra* at 3050; *see United States v. United States District Court*, 407 U.S. 297, 310–12, 92 S.Ct. 2125, 2133–34, 32 L.Ed.2d 752 (1972).

Moreover, the substantial cost to society when the exclusionary rule is applied on collateral review of a wiretapping claim is not offset by a corresponding societal benefit in the form of deterrence of illegal surveillances. The federal wiretapping statute comprehends an extraordinarily complex scheme for regulating electronic surveillance by state and federal law enforcement officials. Not all of the statute's provisions are essential to ensuring that a suspect's fourth amendment rights are protected when government officials employ electronic surveillance during an investigation. Recent decisions of the Supreme Court interpreting Title III suggest that the extreme sanction of the exclusionary rule should not be applied to exclude wiretapped material in all situations in which police have failed to comply with the literal language of Title III. *See United States v. Chavez*, 416 U.S. 562, 94 S.Ct. 1849, 40 L.Ed.2d 380 (1974); *United States v. Giordano*, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974); *United States v. Curreri*, 388 F.Supp. 607, 612 (D.Md.1974). Nonetheless, § 2518(10)(a) provides an "aggrieved" defendant the same opportunity to suppress evidence gained from wiretaps that he would have if the government instead attempted to introduce evidence gained from an unconstitutional search and seizure. Direct review of a claim of illegal wiretapping clearly serves a needed deterrent function in a day when "extensive intrusions into privacy made by electronic surveillance make self-restraint by law enforcement officials an inadequate protection." [4] *United*

4. Additionally, Title III contains a built-in deterrent device in the form of allowing recovery for civil damages when wire or oral communications are intercepted in violation of the statute's provisions. Section 2520 provides:

Any person whose wire or oral communication is intercepted, disclosed, or used in violation of this chapter shall (1) have a civil cause of action against any person who intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use such

States v. White, 401 U.S. 745, 762, 91 S.Ct. 1122, 1131, 28 L.Ed.2d 453 (1971) (Douglas, J., dissenting). We do not readily ignore the often-expressed fear, corroborated to a degree by events of the past few years, that overzealous law enforcement officials using technological breakthroughs in techniques of physical surveillance will seriously erode the concept of individual privacy. See United States v. Marion, 535 F.2d 697 (2d Cir. 1976); United States v. Capra, supra at 276–77; E. Lapidus, Eavesdropping on Trial 2, 27 (1974); R. Clark, Crime in America 287 (1970). See generally S. Dash, The Eavesdroppers (1959).

However, where the introduction at trial of evidence gained from electronic eavesdropping is attacked on a habeas corpus petition, after the state courts have upheld the constitutionality of the surveillance, application of the exclusionary rule to overturn an entirely valid conviction stretches the limits of logic and common sense. A law enforcement official who violates the federal wiretap statute in the course of an investigation presumably is discouraged from repeating his conduct by the suppression of evidence gained from the surveillance. See United States v. Janis, —— U.S. ——, 96 S.Ct. 3021, 3029, 49 L.Ed.2d 1046 (1976). If the evidence is admitted at trial over the defendant's objections and a conviction results, reversal on direct review

generates an "educative effect," Stone v. Powell, supra at 3051, that justifies overturning a conviction. Applying the exclusionary rule on a collateral review of a conviction based on illegally obtained wiretap evidence, however, has little deterrent value or educative effect. The remoteness in time of habeas review from the wiretapping and the jurisdictional distance of the reviewing court that overturns a state conviction can only result in confusion and generate "disrespect for the law and administration of justice," Stone v. Powell, supra at 3050, particularly where two or three levels of state courts have ruled that the wiretap evidence was properly admitted.

At certain points in the criminal justice process, society's interest in convicting the guilty outweighs the deterrent value of the exclusionary rule. For example, a conviction based, in part, on illegally seized evidence may later be upheld on the ground that the introduction of the illegally seized evidence was "harmless error." See F.R. Cr.P. 52; United States v. Quintana, 508 F.2d 867, 873 (7th Cir. 1975). The fact that other, untainted evidence was available to the trier of fact does not diminish the violation of the defendant's fourth amendment rights. If deterrence of fourth amendment violations were the only consideration, the conviction would be reversed in the interest

communications, and (2) be entitled to recover from any such person—
(a) actual damages but not less than liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher;
(b) punitive damages; and
(c) a reasonable attorney's fee and other litigation costs reasonably incurred.
A good faith reliance on a court order or on the provisions of section 2518(7) of this chapter shall constitute a complete defense to any civil or criminal action brought under this chapter.
Moreover, § 2520 affords greater relief to the victim of illegal surveillance, and concomitantly generates a stronger deterrent effect, than the remedies for a violation of the fourth amendment afforded by the decision in Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Under the Bivens approach,

only compensatory damages would be allowed, appellees could interpose a general "good faith" defense, and jurisdiction would be premised on 28 U.S.C. § 1331 (1970), which requires over a $10,000 amount in controversy, see e.g., Sullivan v. Murphy, 156 U.S.App.D.C. 28, 50, 53, 478 F.2d 938, 960, 963, cert. denied, 414 U.S. 880, 94 S.Ct. 162, 38 L.Ed.2d 125 (1973); under a statutory theory, appellants could recover not only actual damages (with minimum liquidated damages computed at the rate of $100 per day for each day of violation), but also punitive damages and attorney's fees, and appellees could interpose only a narrow and specific good faith defense. This statutory remedy, however, is limited by 18 U.S.C. § 2520 (1970) to eavesdropping that is "in violation of this chapter [Title III]."
Zweibon v. Mitchell, 170 U.S.App.D.C. 1, 516 F.2d 594, 659 (1975), cert. denied, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 187 (1976) (footnotes omitted).

of educating law enforcement officials in fourth amendment values. In another context, federal habeas review may be denied a state petitioner who has intentionally failed in the state proceedings to raise an objection to an unconstitutional search and seizure. A fourth amendment "absolutist" might suggest that, if the petitioner were the victim of an illegal search and seizure, the federal courts always should review the petition and overturn the conviction in order to deter future violations. Nonetheless, equitable principles justify denying relief to an applicant who has "deliberately bypassed the orderly procedure of the state courts." *Fay v. Noia,* 372 U.S. 391, 438, 83 S.Ct. 822, 849, 9 L.Ed.2d 837 (1963); *United States ex rel. Terry v. Henderson,* 462 F.2d 1125, 1128 (2d Cir. 1972). *Compare Henry v. Mississippi,* 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965).

So, too, a line must be drawn with respect to collateral review of claims of unconstitutional electronic surveillance. The costs to society of applying the exclusionary rule in this context are substantial, while the deterrent benefits are highly questionable. *See Amsterdam, Search, Seizure, and Section 2255: A Comment,* 112 U.Pa.L.Rev. 378 (1964).

■ Moreover, we do not think that application of *Stone v. Powell* to habeas review of illegal surveillance claims is a further portent of the "substantial evisceration of federal habeas corpus jurisdiction." 96 S.Ct. at 3056 (Brennan, J., dissenting). Obviously, a claim under § 2254, if grounded in the "laws . . . of the United States," is just as cognizable as a claim whose source is the Constitution. But not every asserted violation of the federal wiretap laws, a compendium of both constitutional guarantees and highly technical procedures, can be the basis for a § 2254 motion. Discussing the limits of habeas review in *Davis v. United States,* 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974), the Supreme Court observed:

In *Hill v. United States,* 368 U.S. 424, 429, 82 S.Ct. 468, 472, 7 L.Ed.2d 417 (1962), for example, we held that "collateral relief is not available when all that is shown is a failure to comply with the formal requirements" of a rule of criminal procedure in the absence of any indication that the defendant was prejudiced by the asserted technical error. We suggested that the appropriate inquiry was whether the claimed error of law was a "fundamental defect which inherently results in a complete miscarriage of justice," and whether "[i]t . . . present[s] exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent." *Id.,* at 428, 82 S.Ct. [468], at 471 (internal quotation marks omitted).

417 U.S. at 346, 94 S.Ct. at 2305. *See Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976); *Wright v. Wainwright,* 537 F.2d 224 (5th Cir. 1976). *See also Sunal v. Large,* 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982 (1947).

■ Thus, violations of such technical provisions of the wiretap law as the requirement that the government, in seeking a wiretap order, identify the law enforcement officer who made and authorized the application for permission to wiretap, 18 U.S.C. § 2518(1)(a); *see United States v. Bohn,* 508 F.2d 1145, 1147 (8th Cir.), *cert. denied,* 421 U.S. 947, 95 S.Ct. 1676, 44 L.Ed.2d 100 (1975), would not ordinarily be "an error of the character or magnitude cognizable under a writ of habeas corpus." *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962). Where a habeas claim raises a violation of a provision of Title III that implements a fourth amendment policy, *see Zweibon v. Mitchell,* 170 U.S.App.D.C. 1, 516 F.2d 594, 668 (1975), *cert. denied,* 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 187 (1976), the limited review our decision contemplates corresponds to the restricted habeas review of search and seizure claims under *Stone v. Powell.* Fourth amendment issues of probable cause, neutrality of the issuing magistrate, sufficiency of supporting affidavits and so forth, are common to both wiretap and ordinary search and seizure claims.

We therefore conclude that when a federal court is presented with a habeas petition claiming the petitioner was the victim of illegal electronic surveillance, the scope of review is limited to ascertaining whether the petitioner had a full and fair opportunity to litigate his claim in the state courts. In the present case, the petitioner challenged the sufficiency of the Morin warrant at a pretrial hearing where he had the opportunity to cross-examine the investigating officers. When his motion to suppress was denied by the trial judge, the petitioner entered a guilty plea without waiving his constitutional objections to the wiretapping. On appeal, the Appellate Division affirmed the conviction and leave to appeal to the Court of Appeals was denied. No petition for certiorari was filed in the United States Supreme Court. There is little doubt that the petitioner was provided with "an opportunity for full and fair litigation of a Fourth Amendment claim." *Stone v. Powell, supra* at 3046. However, at the time this petition was prepared, *Stone v. Powell* had not been decided. Petitioner should be given the opportunity to meet the legal standard announced in *Stone v. Powell.* *See Caver v. Alabama,* 537 F.2d 1333, 1336 n.2 (5th Cir. 1976).

Accordingly, the petitioner's application for a writ of habeas corpus is denied unless within twenty (20) days petitioner can demonstrate that he did not have a full and fair opportunity in the state courts to litigate his wiretapping claim, and it is

SO ORDERED.