666 F.2d 191
 Thomas Rafael LLAMAS-ALMAGUER, a/k/a Tomas Llamas,
Petitioner-Appellant,
v.
Louie L. WAINWRIGHT, Secretary, Department of Offender
Rehabilitation, and the Honorable Jim Smith,
Attorney General, State of Florida,
Respondents-Appellees.
 No. 80-5374.
 United States Court of Appeals,
Fifth Circuit.
 Unit B*
Jan. 22, 1982.
 
 Long & Smith, Harold Long, Jr., Miami, Fla., for petitioner-appellant.
 Steven L. Bolotin, Calianne P. Lantz, Asst. Attys. Gen., Miami, Fla., for respondents-appellees.
 Appeal from the United States District Court for the Southern District of Florida.
 Before HILL, Circuit Judge, SMITH**, Judge, and HENDERSON, Circuit Judge.
 SMITH, Judge:
 
 
 1
 Thomas Rafael Llamas-Almaguer (appellant) appeals an order of the United States District Court for the Southern District of Florida, entered April 15, 1980, which dismissed appellant's petition for a writ of habeas corpus. Appellant filed the petition with the district court pursuant to 28 U.S.C. § 2254, alleging that he had been illegally convicted in the Eleventh Judicial Circuit of Dade County, Florida, of conspiracy to aid or assist in the conduct of a lottery and aiding or assisting in conducting a lottery. His petition for a writ of habeas corpus alleged, inter alia, that his conviction was illegally obtained by the use of wiretap orders authorized by the state court but which were issued in violation of his constitutional rights under the fourth, fifth, ninth, and fourteenth amendments, or which did not meet the minimum standards contained in title III of the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. § 2510 et seq. (hereinafter title III).
 
 
 2
 As noted by District Judge Spellman in the order of dismissal, appellant raised the same constitutional objections in a motion to suppress the wiretap evidence in the state trial court. That motion was denied and appellant thereafter entered pleas of nolo contendere to each of the charges against him, reserving the right to appeal the suppression ruling. Appellant was convicted and instituted an appeal in which he raised, and the state appellate court addressed, the identical issues as to the wiretap orders raised in his petition to the United States district court. That court confirmed appellant's conviction, Cuba v. State, 362 So.2d 29 (Fla.App.3d Dist. 1978), and the Florida Supreme Court denied appellant's petition for writ of certiorari.
 
 
 3
 In his appeal to this court, as in his petition for habeas corpus below, appellant claims several violations of his constitutional and statutory rights, none of which, we conclude, can be heard in this court on a habeas corpus petition.
 
 
 4
 As to his fifth and ninth amendment claims, appellant makes no arguments based on those amendments, he cites no cases concerned with them, and he alleges no facts suggesting violations of them. We therefore deny relief based on the fifth and ninth amendments.
 
 
 5
 Appellant also alleged two violations of the Florida wiretapping statute (Fla.Stat. § 934.09): staleness of evidence establishing probable cause and using one wiretap as probable cause for another. But it is elementary that questions of state law cannot be raised on federal habeas. 28 U.S.C. § 2254(a) ("only on the ground that he is in custody in violation of the * * * laws * * * of the United States").
 
 
 6
 Appellant claims several violations of the fourth amendment, as applied to the states through the fourteenth amendment: lack of probable cause, lack of a neutral and detached magistrate, and use of a general warrant. While these charges, if true, would state claims under the fourth amendment, we are precluded by Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), from hearing them on habeas review of a state court judgment absent any showing that the state courts did not provide appellant "an opportunity for full and fair litigation of (his) Fourth Amendment claim(s)." Id., 428 U.S. at 482, 96 S.Ct. at 3046. The fact that the challenged evidence in Stone v. Powell was testimony concerning a revolver found on the person of the accused, whereas here the challenged evidence consists of court-obtained wiretaps, is, in our opinion, a distinction without a legal difference. The Supreme Court did not purport to limit the scope of Stone to particular types of fourth amendment violations, and the full applicability of the fourth amendment to wiretapping has been firmly established since the Berger v. New York, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967), and Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), decisions.
 
 
 7
 We have carefully examined the record and the submissions, including post-argument notices of supplemental authorities by both parties, and we would be hard put to find that appellant could receive in federal court a more thorough consideration of his constitutional claims than the consideration he received at all levels of the state proceedings. We therefore may not consider appellant's fourth amendment claims, but note in passing that we have no reason to think that their resolution in the state courts was anything but fully correct.
 
 
 8
 This leaves only the allegation of a violation of the federal wiretapping statute, title III, conceded by all to be operative in this case. See State v. McGillicuddy, 342 So.2d 567, 568 (Fla.App.2d Dist. 1977). Violations of federal statutory law were not discussed in Stone v. Powell. However, the heavy reliance in that opinion on the unique policies of the fourth amendment and particularly of the exclusionary rule (Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)), Stone v. Powell, supra, 428 U.S. at 482-89, 96 S.Ct. at 3046-3050, makes it clear that Stone cannot automatically be applied to federal statutes, even to one based on fourth amendment concerns as title III is. Title III was clearly intended to go beyond the bare fourth amendment protection, and it would therefore be inaccurate to assume that Congress wanted title III to be entirely governed by fourth amendment jurisprudence. Also, title III's exclusionary provisions, 18 U.S.C. §§ 2515, 2518(10)(a), are an integral part of the statutory scheme, and not, as Stone characterizes the Mapp rule, engrafted onto the direct prohibition solely for deterrence purposes.
 
 
 9
 These objections to the application of Stone v. Powell to title III did not persuade the district court in Zagarino v. West, 422 F.Supp. 812 (E.D.N.Y.1976), which considered the same provision of title III that is at issue here. The Zagarino court held, on the basis of Stone, that section 2518(1)(c) is not to be relitigated on habeas, if it received a full and fair hearing in the state courts. While we reach the same result, we disagree with that part of the reasoning in Zagarino which justifies its holding by balancing the costs and benefits of the exclusionary rule in title III. 422 F.Supp. at 815-19. Such arguments are appropriate for the Supreme Court in interpreting a judicially created remedy for constitutional wrongs, but they are not appropriate where Congress has itself struck the balance in its statute. The courts may not pick and choose the sections of title III to which they will give or not give full effect, based on their own views of the virtues and vices of the exclusionary rule of Mapp v. Ohio.
 
 
 10
 The seventh circuit was recently presented with this habeas issue in relation to different portions of title III. Hussong v. Warden, Wisconsin State Reformatory, 623 F.2d 1185 (7th Cir. 1980). Rejecting the Zagarino approach, 623 F.2d at 1188-90, that court nevertheless held that the violations of title III alleged there were not cognizable on habeas because they did not constitute, in the controlling language of Hill v. United States, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962), "a fundamental defect which inherently results in a complete miscarriage of justice," "an omission inconsistent with the rudimentary demands of fair procedure," or " 'exceptional circumstances.' " See Hussong, supra, 623 F.2d at 1190. We agree with the seventh circuit that the Hill standard should be followed in the application of habeas corpus to title III and we follow that standard here.
 
 
 11
 The only remaining question, then, is whether the violation alleged by appellant-lack of
 
 
 12
 a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous (18 U.S.C. § 2518(1)(c))
 
 
 13
 -is within the Hill and Hussong rule. Hussong involved violation of the title III exclusionary rule itself, 18 U.S.C. § 2515, and so would encompass the warrant prerequisite involved here,[1] especially where the prerequisite is violated, if at all, not by complete omission or flagrant disregard, but by marginal inadequacy. Like the Hussong court, 623 F.2d at 1191, we refrain from laying down a rule that a violation of section 2518(1)(c) can never constitute a "complete miscarriage of justice," but based on the record here and the submissions of the parties, there is no reason to believe that appellant was not convicted on the basis of probative and reliable evidence.
 
 
 14
 While we do not follow the district judge's use of the Zagarino rationale, we agree with his substantive finding that appellant was given an opportunity for a full and fair hearing on his claims; therefore, the judgment of the district court is
 
 
 15
 AFFIRMED.
 
 
 
 *
 Former Fifth Circuit case, Section 9(1) of Public Law 96-452-October 14, 1980
 
 
 **
 Honorable Edward S. Smith, Judge for the U.S. Court of Claims, sitting by designation
 
 
 [1]
 Zagarino v. West, in addition to its reasoning based on Stone v. Powell, characterized section 2518(1)(c) as a "technical provi(sion)" of title III and therefore held that Hill barred habeas review. 422 F.Supp. 812, 819
 See also United States v. Donovan, 429 U.S. 413, 435-37, 97 S.Ct. 658, 671-673, 50 L.Ed.2d 652 (1977) (title III held not to require suppression of evidence for violation of § 2518(1)(b), another title III warrant prerequisite).