**UNITED STATES COURT OF APPEALS**
**Tenth Circuit**
**Byron White United States Courthouse**
**1823 Stout Street**
**Denver, Colorado 80294**
**(303) 844-3157**

Patrick J. Fisher, Jr.                                                                            Elisabeth A. Shumaker
Clerk                                                                                               Chief Deputy Clerk

March 2, 2000


**TO:** ALL RECIPIENTS OF THE ORDER AND JUDGMENT

**RE:** 98-3133, *Johnson-Howell v. McKune*
Filed on February 28, 2000

The order and judgment filed in this matter contains a clerical error in the first footnote on page one. Please delete the first sentence of the footnote, which reads: "The case is unanimously ordered submitted without oral argument pursuant to Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G)." The appeal was submitted after oral argument. Consequently, the footnote is corrected to read:

This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Please make the correction to your copy of the order and judgment.

Sincerely,

Patrick Fisher, Clerk of Court


By:   Keith Nelson
Deputy Clerk

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 28 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

FAYE A. JOHNSON-HOWELL,

     Petitioner - Appellant,

v.

WARDEN MCKUNE; THE
ATTORNEY GENERAL OF THE
STATE OF KANSAS,

     Respondents - Appellees.

No. 98-3133
(D.C. No. 95-CV-3093-DES)
(District of Kansas)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRORBY**, **HENRY** and **LUCERO**, Circuit Judges.

---

Convicted of one count of first-degree murder and one count of conspiracy

to commit murder for her involvement in the murder of her husband, Faye A.

Johnson-Howell appeals the district court's denial of her petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254. At issue in this appeal are the

district court's determinations that (1) evidence allegedly obtained in violation of

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

the federal wiretap statute, 18 U.S.C. §§ 2510-2522, resulted in harmless error, (2) the admission of testimony by a police officer regarding statements made by Johnson-Howell's co-conspirator in the murder, even if error in violation of the Confrontation Clause of the Sixth Amendment, was harmless error, and (3) even when combined, such alleged errors did not constitute cumulative error. Because we do not find the requisite prejudice for habeas relief in light of the substantial evidence supporting Johnson-Howell's conviction, we affirm the district court's dismissal of her petition for a writ of habeas corpus.

## I

Johnson-Howell and her husband, Charles Howell, were separated and in the process of divorcing. Nine months prior to the murder, Howell physically assaulted her. Following the assault, she began to discuss getting even with her husband and threatened to kill him or have him killed. On February 8, 1990, Howell was shot and killed at the home of his girlfriend, Bobbi Bolton, where he was living at the time.

Evidence linking Johnson-Howell to the murder include her emotional and physical relationship with LaJuan Clemons, the person convicted of shooting Howell, a letter Johnson-Howell sent to Oprah Winfrey in which she threatened to kill her husband or have him killed, and her admission to having discussions with friends and family regarding her desire to get even with Howell for his assault on

her. Furthermore, Max Howell, the son of Howell and Johnson-Howell, testified that he called his father the morning of the murder to see if he was at Bolton's home or at work where he usually was at that time. Max testified that his mother knew he was calling, which put her in a position to know that Howell was at Bolton's home. Bolton testified that Max had never, in the year she lived with Howell, called for him at that time of day. Johnson-Howell had rented a car similar to the one described as being at the scene by Bolton, a police officer, and neighbors around the time of the shooting. Shortly after the shooting, the police seized the rental car. A search revealed a set of keys belonging to Clemons, his fingerprints on the trunk of the car, mud consistent with the undeveloped area behind Bolton's house, and tire treads matching those behind the house. The police also recovered from Clemons's home two shotgun shells similar to those used to kill Howell and an answering machine allegedly stolen from Bolton's home.

One of the pieces of evidence at issue in this case is a recorded telephone conversation between Johnson-Howell and her secretary, Frank Parker, in which she discussed hiring someone to harm or kill Howell. The conversation was recorded on an answering machine Howell had installed in the basement of their home. Before trial, Johnson-Howell sought to suppress the recording of her conversation with Parker, alleging violation of the federal wiretap statute which

prohibits the use at trial of communications intercepted illegally.  See 18 U.S.C. § 2515.  The state trial court admitted the recording, and Johnson-Howell took the stand at trial to explain the background of the conversation, but ultimately admitted to the accuracy of the tape.

Johnson-Howell also unsuccessfully objected on Sixth Amendment Confrontation Clause grounds to the admission of statements by Clemons, who was found in contempt of court for refusing to testify at her trial.  The state trial court allowed a police officer to testify regarding statements made by Clemons to the police, based on the state of mind and declaration against interest exceptions to the rule against the admission of hearsay.  The officer testified to Clemons's statements that he knew Howell had been murdered, that he and Johnson-Howell drove a rental car to Howell's residence the night before the murder, and that they "went to a street behind the residence and counted over the number of houses that Charles Howell's residence was."  Kansas v. Johnson-Howell, 881 P.2d 1288, 1294 (1994).  Johnson-Howell objected to the government's questioning of the officer regarding Clemons's statement that he would do anything for her.  The state trial court sustained the objection.

The Kansas Supreme Court affirmed Johnson-Howell's conviction holding, inter alia, that admission of the recording was permissible under the federal wiretap statute and that admission of Clemons's statements via testimony of a

- 4 -

police officer was harmless error. See id. at 1301, 1302. Johnson-Howell filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, which the federal district court denied.[1] It is that denial which she now appeals.

## II

The Kansas Supreme Court affirmed petitioner's conviction on September 16, 1994. Johnson-Howell filed for habeas relief pursuant to 28 U.S.C. § 2254 in federal district court on March 2, 1995. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") does not apply to this appeal because Johnson-Howell filed her habeas petition before the law's enactment. See Lindh v. Murphy, 521 U.S. 320, 322-323 (1997). Therefore, pre-AEDPA law provides the

---

[1] The district court granted Johnson-Howell a certificate of appealability as to all of the issues she raises on appeal. See 28 U.S.C. § 2253(c)(2). However, Johnson-Howell filed her habeas petition prior to the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 and is therefore subject to the requirement that she obtain a certificate of probable cause by making a substantial showing of the denial of a federal right. See Barefoot v. Estelle, 463 U.S. 880, 893 (1983). Because this is the same showing required for a certificate of appealability, see Lennox v. Evans, 87 F.3d 431, 434 (10th Cir. 1996), overruled on other grounds, United States v. Kunzman, 125 F.3d 1363, 1364 n.2 (10th Cir. 1997), we construe the certificate of appealability as a certificate of probable cause.

appropriate standards of review. We review the district court's determinations of legal issues de novo. See Jackson v. Shanks, 143 F.3d 1313, 1317 (10th Cir.), cert. denied, 119 S. Ct. 378 (1998). We review the federal district court's factual findings for clear error, while presuming that the findings of fact made by the state court are correct unless they are not fairly supported by the record. See Brown v. Shanks, 185 F.3d 1122, 1124 (10th Cir. 1999).

**A**

Evidence obtained through the unauthorized interception of wire or oral communications cannot be admitted in state court criminal proceedings. See 18 U.S.C. § 2515. At issue in this case is the recorded telephone conversation between Johnson-Howell and Parker during which petitioner discussed hiring someone to harm or kill Howell. The Kansas Supreme Court held that the admission of this recording did not violate the federal wiretap statute. See Johnson-Howell, 881 P.2d at 1301-02. The district court, however, held that, even if it were to find or assume a violation of the federal wiretap statute, Johnson-Howell would still not be entitled to a writ of habeas corpus because the admission did not cause the requisite prejudice. On appeal, the government does not argue that admission of the recording was proper, but rather argues that if there was error, it was not sufficiently prejudicial to warrant reversal. We need not reach the question of whether the state court erred in admitting the recording

because we agree with the district court's conclusion that Johnson-Howell is unable to establish prejudice.

A state prisoner may obtain federal habeas corpus relief only on the ground that she is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The alleged error in admitting this recording is statutory. See 18 U.S.C. § 2515. A state trial court's "nonconstitutional, nonjurisdictional error must 'present exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.'" United States v. Talk, 158 F.3d 1064, 1069 (10th Cir. 1998) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)). Thus, a habeas petition alleging violation of a federal statute will only be cognizable when it qualifies as "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure." Hill, 368 U.S. at 428; see also Knox v. Wyoming Dep't of Corrections State Penitentiary Warden, 34 F.3d 964, 968 (10th Cir. 1994).[2] The district court decided that "[g]iven the

---

[2] The government argues that Johnson-Howell's claim is barred because she had a full and fair opportunity to litigate her claim in the state court, see Zagarino v. West, 422 F. Supp. 812, 820 (E.D.N.Y. 1976) (holding that the scope of review in federal court for a habeas petition asserting a nonconstitutional, nonjurisdictional error is limited to ascertaining whether the petitioner had a full and fair opportunity to litigate that claim in state court), but that is not the approach the Tenth Circuit has decided to apply to nonconstitutional, nonjurisdictional errors. See Knox, 34 F.3d at 968; see also Llamas-Almaguer v.

(continued...)

substantial evidence of petitioner's involvement in the activities surrounding her husband's death . . . the court finds no miscarriage of justice resulted from the alleged violation of the federal statute in this case." (Appellant's App. at 75.) Johnson-Howell is correct that the district court only concluded there was no miscarriage of justice, but did not proceed to determine whether there was "an omission inconsistent with the rudimentary demands of fair procedure." Hill, 368 U.S. at 428.

We agree with the district court that there was substantial evidence of Johnson-Howell's involvement in the activities surrounding her husband's murder. The state trial court's erroneous admission of the recording was harmless because it was by no means the only evidence corroborating Johnson-Howell's plan to harm or kill her husband. She sent a letter to Oprah Winfrey in which she threatened to kill her husband or have him killed, and she admitted to having discussions with friends and family regarding her desire to get even with Howell for his abuse. Moreover, contrary to Johnson-Howell's assertion, the state trial court did apply federal law. It expressly found there was no violation of the federal wiretap statute, and that finding has been subject to direct and collateral

[2](...continued)
Wainwright, 666 F.2d 191, 194 (5th Cir. 1982) (rejecting the Zagarino standard in favor of Hill standard in deciding a habeas petition alleging a violation of the federal wiretap statute); Hussong v. Warden Wis. State Reformatory, 623 F.2d 1185, 1188-90 (7th Cir. 1980) (same).

review. Because of the other evidence corroborating her plan and the substantial evidence linking her to the murder, and because her motion to suppress was given full and adequate consideration, the admission of the recording did not result in a complete miscarriage of justice and was not inconsistent with the rudimentary demands of fair procedure. See Knox, 34 F.3d at 968.

**B**

The Confrontation Clause of the Sixth Amendment, applicable to the states through the Fourteenth Amendment, states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. A primary interest secured by this clause is the right of cross-examination, reflecting a preference for face-to-face confrontation at trial. See Crespin v. New Mexico, 144 F.3d 641, 646 (10th Cir. 1998). "Accordingly, 'the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant.'" Id. (quoting Ohio v. Roberts, 448 U.S. 56, 65 (1980)). In addition, the statement must contain sufficient indicia of reliability. See id.

After holding Clemons in contempt of court for refusing to testify at Johnson-Howell's trial, the state trial court allowed a police officer to testify to Clemons's statements that he knew of Howell's murder, that he and Johnson-Howell drove the rental car to Howell's residence the night before the murder,

and that they "went to a street behind the residence and counted over the number of houses that Charles Howell's residence was." Johnson-Howell, 881 P.2d at 1294. Johnson-Howell also contends that she was prejudiced by the leading nature of the questions the government put to Clemons with full knowledge that he would not answer. Specifically, the government asked Clemons whether he was in the area of Howell's residence in the rental car on February 7, whether he was in possession of the rental car on February 8, and whether he had told a detective he would do anything for Johnson-Howell.

The Kansas Supreme Court held that the admission of the police officer's statements violated both the hearsay rule and the state and federal constitutional right of confrontation, but determined that the statements, as well as the questioning regarding Clemons's inclination to do anything for Johnson-Howell, were harmless and did not deprive her of a fair trial. Id. at 1295-1301. The Kansas Supreme Court did not address the propriety of the other question put to Clemons. The district court declined to reach the merits of the issue, holding that, even if a Sixth Amendment Confrontation Clause violation was assumed, any such error would be harmless. The government does not contest the merits of the alleged Confrontation Clause violation on appeal, arguing only that it was harmless error.

Confrontation Clause violations are subject to harmless error analysis.  See Crespin, 144 F.3d at 649; see also Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986).  A federal court should not grant relief unless it finds the state court's trial error "'had substantial and injurious effect or influence in determining the jury's verdict.'"  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).  A habeas petitioner must "establish that [the trial error] resulted in 'actual prejudice.'"  Brecht, 507 U.S. at 637 (citation omitted).  The petitioner must prevail where a federal court, upon reviewing the entire record, "'is in grave doubt as to the harmlessness of the error.'"  Crespin, 144 F.3d at 649 (quoting O'Neal v. McAninch, 513 U.S. 432, 437 (1995)).[3]

Most of the statements and questions to which Johnson-Howell objects were harmless because they supported propositions that were corroborated by other evidence in the record.  Any inference the jury might have drawn from the question regarding Clemons's affinity for doing anything for Johnson-Howell was also supported by ample evidence of their relationship, including her own testimony that they "were both emotionally and physically involved."  (V R. at

_____

[3] Johnson-Howell argues the district court should have applied Chapman v. California, 386 U.S. 18, 24 (1967), to determine prejudice.  That approach has been rejected by this Circuit in favor of the standard enunciated in Brecht, 507 U.S. at 637.  See Crespin, 144 F.3d at 649 n.6.

91.) The leading questions and statements regarding the car rental were corroborated by other witnesses' testimony, including Johnson-Howell's own testimony. The recovery of the car rented to Johnson-Howell the next day with a set of keys belonging to Clemons, his fingerprints on the trunk of the car, mud consistent with the undeveloped area behind Bolton's house, and tire treads matching those behind the house was additional evidence supporting the same propositions.

Other statements and questions not supported by independent evidence were also harmless. The statement that Clemons knew the next day that Howell had been murdered did not cause actual prejudice because it did not implicate Johnson-Howell in the murder. Although there was no evidence directly corroborating the proposition that Clemons and Johnson-Howell went to Howell's residence and scouted the area the evening before the murder, any error resulting from its admission was harmless in light of the substantial evidence linking Johnson-Howell to Clemons and the rental car, demonstrating her plan to kill or get even with her husband, and connecting Clemons to the commission of the murder. Therefore, the admission of Clemons's statements through the police officer and the allegedly prejudicial questioning did not have a "'substantial and injurious effect or influence in determining the jury's verdict.'" Brecht, 507 U.S. at 637 (quoting Kotteakos, 328 U.S. at 776).

- 12 -

## III

"A cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." United States v. Rivera, 900 F.2d 1462, 1470 (10th Cir. 1990) (en banc). Reversal may be warranted if the errors affected the petitioner's substantial rights. See id.

There was sufficient evidence presented at trial, apart from the recording and Clemons's statements, to support Johnson-Howell's conviction.[4] As noted, she sent a letter to Oprah Winfrey in which she threatened to kill Howell or have him killed and she admitted to having discussions with friends and family regarding her desire to get even with Howell for his assault. Her participation in the murder was supported by the evidence of her son's phone call that morning,

---

[4] Johnson-Howell attempts to raise other alleged trial errors that have not been appealed individually, arguing that prejudice resulted from prosecutorial misconduct and the admission of evidence pertaining to Clemons's bad character, his parole status, his recent arrest record, and his possession of two handguns that may have belonged to her, but were not involved in the murder. This attempt is unavailing because no court has found these acts to be error, and a petitioner can show no basis for cumulative error where no error was found. See United States v. Hernandez-Muniz, 170 F.3d 1007, 1013 (10th Cir. 1999); see also United States v. Haar, 931 F.2d 1368, 1377 (10th Cir. 1991) ("The effect of non-errors . . . is not to be included in the aggregation."). Furthermore, even if these admissions were error, we find that, in light of the substantial evidence supporting the conviction, Johnson-Howell's substantial rights were not affected. See Rivera, 900 F.2d at 1470.

which put her in a position to know that Howell was home, and her rental of a car similar to one described as being at the scene around the time of the shooting. There was substantial evidence that Clemons committed the murder. The seized rental car contained Clemons's keys, had his fingerprints on the trunk, mud consistent with that behind Bolton's house, and tire treads matching those behind the house. The police also recovered at Clemons's home two shotgun shells similar to those used to kill Howell and an answering machine from Bolton's home. It was undisputed that Johnson-Howell had a close relationship with Clemons. The conviction was supported by independent evidence such that the cumulative effect of the alleged errors did not affect Johnson-Howell's substantial rights. See Rivera, 900 F.2d at 1470-71.

## IV

We **AFFIRM** the district court's dismissal of Johnson-Howell's petition for a writ of habeas corpus.

The mandate shall issue forthwith.

ENTERED FOR THE COURT


Carlos F. Lucero
Circuit Judge

- 14 -