Kenneth H. ADAMS, Walter L. Evans, William V. Evans, R.K. Sellers, Petitioners-Appellants,

v.

Richard B. LANKFORD, Respondent-Appellee.

No. 85–8267.

United States Court of Appeals, Eleventh Circuit.

May 9, 1986.

Herbert Shafer, Atlanta, Ga., David H. Remes, Covington & Burling, Washington, D.C., for petitioners-appellants.

H. Allen Moye, Atlanta, Ga., for respondent-appellee.

Before JOHNSON and ANDERSON, Circuit Judges, and DYER, Senior Circuit Judge.

ANDERSON, Circuit Judge:

Appellants Adams, Walter Evans, William Evans, and Sellers were indicted and convicted under the Georgia RICO statute based on offenses of commercial gambling. Prior to trial, they filed motions to suppress tape recordings of conversations taken from various telephone wiretaps. Appellants argued that the Fulton County District Attorney and a Fulton County Superior Court judge had no authority, under either Georgia law or Title III of the Omnibus Crime Control and Safe Streets Act, 18

U.S.C. §§ 2516(2), 2518(3), to authorize wiretaps on telephones outside Fulton County. Following an evidentiary hearing, the trial court denied the motion to suppress.

On direct appeal of their convictions, appellants again argued that the applications by the Fulton County District Attorney and the authorization of wiretaps by a Fulton County Superior Court judge violated Georgia law and Title III. In *Evans v. Georgia*, 252 Ga. 312, 314 S.E.2d 421, 425 (1984), the Georgia Supreme Court recognized that for evidence obtained through state-authorized wiretaps to be admissible, it must have been obtained in compliance with both state and federal law. Appellants argued there, as they continue to do so before this court, that their case turned on the court's interpretation of 18 U.S.C. § 2518(3). That section provides that upon a proper party's application for a wiretap order, a judge may enter an order "authorizing or approving interception of wire or oral communications within the territorial jurisdiction of the court in which the judge is sitting" if certain conditions not relevant to this case obtain. Under appellants' theory, their communications were "intercepted" at their telephones. They argued, therefore, that because some of these telephones were located outside Fulton County, the interception occurred outside "the territorial jurisdiction" of the Fulton County Superior Court judge that issued the wiretap orders. The Georgia Supreme Court rejected this contention, noting that Title III defines the term "intercept" as " 'the aural acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical, or other device.' " *Evans*, 314 S.E.2d at 425 (quoting 18 U.S.C.A. § 2510(4)). The court reasoned that · § 2518(3) had not been violated because appellants' conversations were "aurally acquired" (heard) at the police listening post which was located within the Atlanta Judicial District. *Evans*, 314 S.E.2d at 425–26.

Appellants filed federal habeas petitions pursuant to 28 U.S.C. § 2254, asserting violations of the federal statute, i.e., Title III. Appellee (hereafter referred to as "Georgia" or "the State") filed a motion to dismiss under Fed.R.Civ.P. 12(b)(6), arguing that the Georgia Supreme Court's interpretation of Title III was correct, and, in any event, the merits need not be reached because the alleged Title III violation was not cognizable on habeas review. The district court reached the merits, interpreted Title III in the same manner as had the Georgia Supreme Court, and granted the state's 12(b)(6) motion.

Appellants now appeal the district court decision claiming (1) that the alleged Title III violation is cognizable on habeas review; (2) that the district court erred in its interpretation of Title III, i.e., that there is a violation of the statute when a Fulton County Superior Court judge issues a wiretap order for a phone outside Fulton County upon application by the Fulton County District Attorney; and (3) that the district court improperly converted Georgia's 12(b)(6) motion into a motion for summary judgment and decided the merits of appellants' claims without providing appellants with sufficient notice or opportunity to prepare an argument on the merits. Because we find that the alleged violations of Title III do not implicate the core concerns of the federal wiretap statute, we hold that these claims are not cognizable on habeas review. Consequently, in affirming the judgment of the district court, we find it unnecessary to reach appellants' second and third claims on appeal.

## FACTS

The facts pertinent to our discussion of this appeal are as follows. The evidence at trial showed that appellants participated in a lottery ring operating in the metropolitan Atlanta area which involved gambling on the volume of stocks and bonds traded on the New York Stock Exchange. Evidence against appellants was obtained pursuant to 12 wiretap orders issued by a Fulton County Superior Court judge upon application by the Fulton County District Attorney. In all, 41 telephones were tapped, 23 of which were located outside Fulton Coun-

ty (i.e., outside the Atlanta Judicial Circuit).[1] Georgia law divides the state into 45 judicial circuits. The Atlanta Judicial Circuit, within which 12 Fulton County Superior Court judges preside, is coextensive with Fulton County. *See* O.C.G.A. § 15–6–1(3) (1985).

Appellants contend that the evidence obtained through wiretaps on phones outside Fulton County was obtained in violation of 18 U.S.C. §§ 2516(2) and 2518(3). They claim that this evidence obtained in violation of the statute must be excluded pursuant to 18 U.S.C. § 2515.[2] The issue we decide today is whether the Title III violations appellants allege are of sufficient magnitude to be cognizable on habeas corpus review. We conclude that they are not.

## DISCUSSION

### A. *Legal Background*

■ We note at the outset that appellants' Title III claims are not barred from consideration on habeas corpus review by the rule of *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). In

1. In *Evans v. State*, 252 Ga. 312, 314 S.E.2d 421 (1984), the Georgia Supreme Court described the surveillance in greater detail.

   The Fulton district attorney's surveillance team worked out of a rented motel room near the intersection of Sylvan Road and Interstate 85, in Hapeville, Fulton County (the "listening post"). The initial step in the installation of each of the wiretaps was to present the court order authorizing the wiretap to the telephone company, which then selected an "appearance point" and informed the investigators of its location. An "appearance point" was a site, located at some point between the telephone to be tapped and the telephone company central switching office servicing it, where the line to be tapped, also known as the "subscriber line", converged with another telephone line running to the central switching office, with the latter line being leased to the district attorney (the "leased line"). All of the appearance points assigned for the surveillance involved in this case were located in neighborhood junction boxes, also known as terminal boxes, which ... were located in the same county as the telephone to be tapped. *Id.* at 313, 314 S.E.2d at 423–24.

2. The exclusionary rule of Title III provides:

*Llamas-Almaguer v. Wainwright*, 666 F.2d 191, 193–94 (5th Cir.1982) (Unit B),[3] the former Fifth Circuit held that the limitations of *Stone v. Powell* are inapplicable where violations of Title III's exclusionary rule, 18 U.S.C. § 2515, are alleged. We turn then to the general principles governing whether violations of federal statutes are cognizable on federal habeas corpus review.

■ In *Hill v. United States*, 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962), the Supreme Court was presented with the question of whether a federal prisoner's collateral attack pursuant to 28 U.S.C. § 2255[4] could be predicated on a violation of Fed.R.Crim.P. 32(a), which gives the defendant the right to make a statement on his own behalf before he is sentenced. The Court rejected the claim, stating:

The failure of a trial court to ask a defendant represented by an attorney whether he has anything to say before sentence is imposed is not of itself an error of the character or magnitude cognizable under a writ of habeas corpus. It is an error which is neither jurisdic-

Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter.
18 U.S.C. § 2515.

3. In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir.1982), this court adopted as binding precedent all of the post-September 30, 1981, decisions of Unit B of the former Fifth Circuit. *Id.* at 34. *Cf. Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

4. The grounds for relief for nonconstitutional violations under § 2254 are equivalent to those encompassed by § 2255. *Davis v. United States*, 417 U.S. 333, 344, 94 S.Ct. 2298, 2304, 41 L.Ed.2d 109 (1974).

tional nor constitutional. It is not a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure. It does not present "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent."

*Id.* at 428, 82 S.Ct. at 471 (quoting *Bowen v. Johnston,* 306 U.S. 19, 27, 59 S.Ct. 442, 446, 83 L.Ed. 455 (1939)).

In *United States v. Timmreck,* 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979), the Supreme Court held that a guilty plea is not subject to collateral attack when all that can be shown is a formal violation of Fed.R.Crim.P. 11. Applying the *Hill* standard, the *Timmreck* Court stated that the trial judge's acceptance of the defendant's guilty plea without informing the defendant of the mandatory special parole term required by the applicable statute was a "formal" or "technical" violation of Rule 11. 441 U.S. at 783–84, 99 S.Ct. at 2087. As such, the defendant's claim failed to meet

the *Hill* test and was not cognizable on habeas review.[5]

The Supreme Court has not yet applied its habeas cognizability analysis in a Title III context. Moreover, our research has located only one case in which this circuit has considered whether an alleged violation of Title III is cognizable on habeas review. In *Llamas-Almaguer v. Wainwright,* 666 F.2d 191 (5th Cir.1982) (Unit B), the defendant alleged a violation of 18 U.S.C. § 2518(1)(c). That section requires all applications for wiretap orders to include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." In finding that this alleged violation of Title III was not cognizable on habeas review, the court stated that the application prerequisite was violated "if at all, not by complete omission or by flagrant disregard, but by a marginal inadequacy." *Llamas-Almaguer,* 666 F.2d at 194.[6]

---

5. Prior to *Timmreck,* the former Fifth Circuit had applied the *Hill* standard for determining the cognizability of nonconstitutional claims. *Keel v. United States,* 585 F.2d 110 (5th Cir.1978) (en banc). In *Keel,* the sentencing judge had violated Rule 11 by erroneously informing the defendant that the maximum sentence which could be imposed upon conviction was 45 years, rather than 25 years. *Id.* at 112. The court concluded that

> [T]he defendant has not shown that the failure to literally comply with Rule 11 was jurisdictional, unconstitutional, so fundamentally defective as to result in a complete miscarriage of justice, or inconsistent with rudimentary demands of fair procedure. With no indication that he was prejudiced by the asserted technical error, the defendant has not shown the exceptional circumstances required for relief by a writ of habeas corpus.

*Id.* at 114.

In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

6. In *Hussong v. Warden, Wisconsin State Reformatory,* 623 F.2d 1185 (7th Cir.1980), the Seventh Circuit reviewed a defendant's claim that law enforcement officials lacked the requisite probable cause to apply for a wiretap order.

The *Hussong* court held that the *Hill* "miscarriage of justice" standard was not satisfied because there was no reason to believe that the defendant's conviction rested on anything other than probative and reliable evidence, i.e., that there was nothing to indicate that the defendant was not guilty of the crime for which he was convicted. *Id.* at 1191. *Llamas-Almaguer,* which is binding on this court, cited *Hussong* with apparent approval. 666 F.2d at 194. Appellants in the instant case argue strenuously that this court should not follow the *Hussong* approach of examining whether the alleged Title III violations impinged upon the truth-seeking process at trial. They argue that Title III violations will almost never implicate the truth-seeking process, that such a test would be the equivalent of applying a *Stone v. Powell* bar, and thus would be inconsistent with *Llamas-Almaguer's* rejection of the *Stone* bar. We need not decide in this case whether the *Llamas* court approved the *Hussong* rationale as a matter of holding, or merely in dicta. Thus, we need not decide whether to be cognizable on habeas corpus review, a violation must implicate the truth-seeking function. Because this case fits within the more narrow rationale of *Timmreck,* we find it unnecessary to address the broader rationale. The violations appellants allege are merely "technical violations," and do not implicate the core concerns of Title III. *See Fiumara v. United States,* 727 F.2d 209, 213 (2d Cir.1984); *Vitel-*

Thus, our inquiry in this case focuses on whether the asserted Title III violations are merely formal or technical errors, or whether the alleged violations implicate the core concerns of Title III. *See United States v. Timmreck,* 441 U.S. 780, 784, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634 (1979); *Davis v. United States,* 417 U.S. 333, 346, 94 S.Ct. 2298, 2305, 41 L.Ed.2d 109 (1974); *Llamas-Almaguer v. Wainwright,* 666 F.2d 191, 194 (5th Cir.1982) (Unit B); *Keel v. United States,* 585 F.2d 110, 113–14 (5th Cir.1978) (en banc).

### B. *The Instant Case*

For the purposes of our analysis, we can assume the existence of the Title III violation appellants allege. In order to determine whether their Title III claim—i.e., that the wrong district attorney and the wrong superior court judge authorized the wiretap—implicates the core concerns of the statute and thus is cognizable on habeas review, we must examine the statute itself and the legislative history of the federal wiretap law. 18 U.S.C.A. § 2516(2) (West 1970) provides:

> The principal prosecuting attorney of any State, or the principal prosecuting attorney of any political subdivision thereof, if such attorney is authorized by a statute of that State to make application to a State court judge of competent jurisdiction for order authorizing or approving the interception of wire or oral communications, may apply to such judge for, and such judge may grant in conformity with section 2518 of this chapter and with the applicable State statute an order authorizing, or approving the interception of wire or oral communications by investigative or law enforcement officers having responsibility for the investigation of the offense as to which the application is made, when such interception may pro-

vide or has provided evidence of the commission of the offense of murder, kidnapping, gambling, robbery, bribery, extortion, or dealing in narcotic drugs, marihuana or other dangerous drugs, or other crime dangerous to life, limb, or property, and punishable by imprisonment for more than one year, designated in any applicable State statute authorizing such interception, or any conspiracy to commit any of the foregoing offenses.

18 U.S.C.A. § 2518(3) (West 1970) provides:

> Upon [proper] application the judge may enter an ex parte order, as requested or as modified, authorizing or approving interception of wire or oral communications within the territorial jurisdiction of the court in which the judge is sitting, if the judge determines on the basis of the facts submitted by the applicant that—
>
> (a) there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter;
>
> (b) there is probable cause for belief that particular communications concerning that offense will be obtained through such interception;
>
> (c) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous;
>
> (d) there is probable cause for belief that the facilities from which, or the place where, the wire or oral communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such person.

There is no dispute that the Fulton County Superior Court judge had both subject matter jurisdiction[7] and venue[8] over the

---

lo v. Gaughan, 544 F.2d 17, 19 (1st Cir.1976), *cert. denied,* 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977).

**7.** This case, therefore, does not present the type of jurisdictional question which would be cognizable under the *Hill* standard. *See Bowen v. Johnston,* 306 U.S. 19, 59 S.Ct. 442, 83 L.Ed. 455

(1939) (deciding that the question of whether a murder committed in a national park was within the subject matter jurisdiction of a federal court was cognizable on habeas review).

**8.** *See Evans v. State,* 252 Ga. 312, 314 S.E.2d 421, 423 (1984).

crime. Moreover, Fulton County Superior Court judges are clearly "judges of competent jurisdiction" as required by the statute and are empowered to authorize wiretaps on telephones. *See* 18 U.S.C.A. § 2510(9)(b) (West 1970).[9] In short, the only error about which appellants complain is that the district attorney who applied for the wiretap orders and the judge who issued them were from the county "next door."

■ The legislative history of Title III clearly spells out the core congressional concerns behind this statute.

Title III has as its dual purpose (1) protecting the privacy of wire and oral communications, and (2) delineating on a uniform basis the circumstances and conditions under which the interception of wire and oral communications may be authorized.

S.Rep. No. 1097, 90th Cong., 2d Sess., *reprinted in* 1968 U.S.Code Cong. & Ad. News 2112, 2153. Appellants argue that the alleged violations of 18 U.S.C. §§ 2516(2) and 2518(3) "subvert[] Congress' basic goal of protecting individual privacy." Brief of Appellants at 19. While we recognize that some violations of Title III clearly implicate the concern for individual privacy Congress sought to protect in enacting the statute,[10] we find no merit in appellants' contention that because the district attorney that applied for the order and the judge that authorized the wiretap were not in the same county as some of the tapped telephones, Congress' concern for privacy was called into play. The legislative history of §§ 2516(2) and 2518(3) is silent with respect to the connection, if any, between the geographical limitations on state officials' capacity to authorize wiretaps on one hand and the statute's concern for individual privacy on the other. Appel-

lants have failed to show any connection between these alleged violations and Congress' concern for privacy, and we can discern none. Thus, we conclude that the privacy interest does not provide appellants a valid basis for claiming their arguments are cognizable on federal habeas review.

Although appellants make no mention of the other major purpose behind Title III, this congressional concern also merits discussion. As previously stated, one reason Congress enacted Title III was to uniformly delineate the circumstances and conditions under which wiretaps could be authorized. S.Rep. No. 1097, 90th Cong., 2d Sess., *reprinted in* 1968 U.S.Code Cong. & Ad.News at 2153. While the legislative history with respect to 18 U.S.C. § 2518(3) (the judge's role in issuing wiretap orders) does not illuminate this point, *see id.* at 2191, the Senate report's comments on § 2516(2) (the state district attorney's ability to authorize applications for wiretaps) are instructive. *See id.* at 2187. Regarding this section, the report provides that

[t]he intent of the proposed provision is to provide for the centralization of policy relating to statewide law enforcement in the area of the use of electronic surveillance in the chief prosecuting officer of the State. Who that officer would be would be a question of State law. Where no such office exists, policy making would not be possible on a statewide basis; it would have to move down to the next level of government. In most States, the principal prosecuting attorney at the next political level of a State, usually the county, would be the district attorney, State's attorney, or county solicitor. The intent of the proposed provision is to centralize areawide law en-

---

9. This subsection defines "Judge of competent jurisdiction" on the state level as

(b) A judge of any court of general criminal jurisdiction of a State who is authorized by a statute of that State to enter orders authorizing interceptions of wire or oral communications. . . .

In Georgia, superior courts have general criminal jurisdiction and state law provides that

judges of such courts may authorize wiretap orders. O.C.G.A. § 16–11–54(b)(1) (Supp.1985).

10. *See Losinno v. Henderson,* 420 F.Supp. 380, 384–85 (S.D.N.Y.1976) (violation of the minimization provision of Title III).

forcement policy in him. Who he is would also be a question of State law. Where there are both an attorney general and district attorney, either could authorize applications, the attorney general anywhere in the State and the district attorney anywhere in his county. The proposed provision does not envision a further breakdown. Although city attorneys may have in some places limited criminal prosecuting jurisdiction, the proposed provision is not intended to include them.

*Id.*

While this passage of the statute's legislative history might be read to suggest that 18 U.S.C. § 2516(2) was in fact violated when the Fulton County District Attorney applied for wiretap orders for telephones located outside Fulton County, it does not necessarily follow that such a violation is cognizable on habeas review. Under appellants' interpretation of 18 U.S.C. § 2516(2), the Fulton County District Attorney would have been required to obtain the cooperation of the district attorneys for the state circuits in which the target telephones were located. Such a requirement would cut against Congress' stated goal of centralized decisionmaking. In other words, the alleged violation of which appellants complain would alleviate rather than foster the divergent practices that Congress sought to prevent in enacting that section. *See United States v. Giordano*, 416 U.S. 505, 520, 94 S.Ct. 1820, 1829, 40 L.Ed.2d 341 (1974) (quoting S.Rep. No. 1097 with respect to § 2516(1)).[11]

Part of the congressional purpose to centralize law enforcement policy was to fix the responsibility for decisions to apply for and authorize wiretap orders. *See United*

States v. Chavez*, 416 U.S. 562, 571–75, 94 S.Ct. 1849, 1854–56, 40 L.Ed.2d 380 (1974). It is clear that the Title III violations appellants allege do not impinge upon this concern. In fact, appellants would have this responsibility fragmented and shared by several district attorneys from several counties. In this case, responsibility for decision-making with respect to wiretap orders was clearly fixed in the Fulton County District Attorney and the approving superior court judge of Fulton County. We believe this is consistent with Congress' goal of fixing responsibility in proper officials.

An additional indication that Congress did not consider the violations appellants allege to be matters of core concern is the flexibility built into §§ 2516(2) and 2518(3). Both of those sections implicitly delegate to the states the job of defining the territorial parameters of each section. Section 2516(2) refers to the principal prosecuting attorney of "any political subdivision" of a state. It is left to the states to define these subdivisions and in this respect determine the propriety of any given wiretap application. In this case, for example, Georgia could have defined the boundaries of its judicial circuits in such a way that the nearby counties involved here would have been part of the Atlanta Judicial Circuit. In fact, most of Georgia's forty-five judicial circuits do include several counties.

Similarly, § 2518(3) permits state court judges to enter wiretap orders approving interception of wire communications "within the territorial jurisdiction of the court in which the judge is sitting" 18 U.S.C. § 2518(3). Neither the statute nor the legislative history of this section provide any indication as to what Congress intended by the phrase "territorial jurisdiction," [12] ex-

---

**11.** The issue in *Giordano* was whether all evidence obtained in violation of Title III must be excluded at trial under Title III's exclusionary rule, 18 U.S.C. § 2515. Although the Court's analysis of this issue is not the same as our cognizability inquiry, the Court's statements about Congress' purposes in enacting Title III are relevant for this case.

**12.** By contrast, Congress did define which types of state courts could properly issue wiretap orders, i.e., a "judge of competent jurisdiction" is defined in 18 U.S.C. § 2510(9)(b) as any court of general criminal jurisdiction authorized by state statute to authorize wiretaps. It is not disputed that the Fulton County Superior Court judge meets this standard.

cept that it is clear that Congress intended that state law would define the "territorial jurisdiction" of each state court.[13] Given this deference to state law, and the resulting diversity, we conclude that core congressional concerns do not include the matter of the Fulton County District Attorney and the Fulton County Superior Court judge authorizing a wiretap of a telephone located in a nearby county.

## CONCLUSION

In summary, we conclude that the alleged violations do not implicate Congress' core concerns in passing Title III. The alleged errors, therefore, do not constitute fundamental defects resulting in a complete miscarriage of justice, omissions inconsistent with the rudimentary demands of fair procedure, or present exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent. *See Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962). Thus, appellants' claims are not cognizable on federal habeas corpus review.

The judgment of the district court is

AFFIRMED.

---

**13.** For example, since "territorial jurisdiction" is a question of state law, the Georgia Supreme Court could have decided that, so long as the listening device was located within Fulton County, the territorial jurisdiction of the Fulton County superior courts extended to any tele-phone in the state. Although we express no opinion as to whether such an interpretation was intended by the holding in *Evans v. State,* this possibility indicates that the alleged § 2518(3) violation does not implicate a core concern of the statute.