# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 26, 2013

No. 11-60763

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

RICHARD NORTH,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Mississippi

Before STEWART, Chief Judge, and DeMOSS and GRAVES, Circuit Judges.

PER CURIAM:

Appellant Richard North appeals the district court's denial of his motion to suppress evidence obtained from the interception of his cellular phone. Information obtained from the interception led to North's arrest for possession of cocaine. For the following reasons, we reverse the district court's denial of his motion to suppress.

No. 11-60763

## I.

This case stems from the government's investigation of Kenneth Lofton, a Jackson, Mississippi-based cocaine and marijuana distributor. As part of its investigation, the government sought wiretaps on various cell phones. Judge Wingate in the United States District Court for the Southern District of Mississippi authorized wiretaps on two cell phones (Target Telephone 1 and Target Telephone 2) that were used by Lofton. From these wiretaps, Drug Enforcement Agency (DEA) agents intercepted phone conversations between Lofton and a person known as "Jack," arranging an upcoming cocaine transaction. On March 16, 2009, Lofton and "Jack" met in a parking lot in Jackson. The truck driven by "Jack" was registered to Jerry Primer. On March 18, 2009, the government obtained a third wiretap warrant for "Jack's" cell phone (Target Telephone 3). On March 19, 2009, DEA agents obtained a driver's license photograph confirming that "Jack" was in fact Primer.

On March 28, 2009, Primer received a phone call from "Billy," during which the two agreed to meet at a Jackson home used by Primer. Agents followed Primer to the residence, where they observed a Ford Explorer with a Texas license plate parked in the driveway. The Ford Explorer was a rental car that was later determined to have been rented by Richard North.

Based on surveillance and information gathered from intercepted phone calls between Primer and "Billy," the government applied for a warrant authorizing interception of phone calls to and from the phone used by "Billy" (Target Telephone 4). The government stated that it had probable cause to believe the targeted phone was "in the possession of and [was] being used by [BILLY]," and further declared that "Billy" had been identified as a member of a narcotics trafficking organization. The application for the warrant was supported by an affidavit from DEA agent Christopher Gale, and stated that "alternative investigative procedures [had] been tried and failed or appear[ed]

2

unlikely to succeed if tried," and that interception was therefore necessary. The district court approved the application.

Based on phone calls intercepted pursuant to the wiretap of Target Telephone 4, the government concluded that "Billy" was Richard North, and that North and Primer were planning a delivery of cocaine to Jackson on May 16, 2009. Agents also received a copy of North's drivers license photograph. On the date in question, agents learned that North was traveling en route to Jackson from Houston, Texas. Texas state troopers stopped North for speeding. North's vehicle was searched by officers and drug sniffing dogs, but no cocaine was found. Three hours after he was stopped, North was released. Immediately after the stop, a third party listening agent in Metairie, Louisiana intercepted a call on North's cell phone between North and a female friend. Approximately one hour into the call, North revealed that he had cocaine hidden in the car and was returning to Houston. The listening agent forwarded this information to officers in Texas, who intercepted North at his home. North was subsequently arrested for possession of cocaine.

## II.

In November 2009, North and his co-conspirators were indicted for, *inter alia*, conspiring to distribute more than fifty grams of cocaine. North moved to suppress the evidence gathered pursuant to the wiretaps on Target Telephones 3 and 4. North moved to suppress the evidence gathered pursuant to the wiretap on Target Telephone 4 on the grounds that (1) the district court lacked territorial jurisdiction and (2) agents failed to minimize the May 16, 2009 phone call. North moved to suppress the wiretap authorizations for both Target Telephones 3 and 4 on the grounds that the applications contained material misrepresentations and omissions. After an evidentiary hearing, the district court denied North's motion.

No. 11-60763

On appeal, North argues that: (1) the district court in Mississippi lacked territorial jurisdiction to authorize the interception of his May 16, 2009 call because his phone was located in Texas and the listening post was located in Louisiana; (2) the government's applications for authorizations contained material misrepresentations and omissions, which undermine the government's required showings of necessity to resort to wiretaps as an investigative tool; and (3) the government did not comply with monitoring minimization requirements.

## III.

This court reviews "factual findings of a ruling on a motion to suppress for clear error and legal conclusions *de novo*." *United States v. Moore*, 452 F.3d 382, 386 (5th Cir. 2006). North's challenge to the district court's territorial jurisdiction to issue the wiretap warrant is a matter of statutory interpretation that we review de novo. *See United States v. Richardson*, 713 F.3d 232, 234-35 (5th Cir. 2013).

## A.

Title III of the Omnibus Crime Control and Safe Streets Act of 1968 authorizes the use of wiretap surveillance in the context of a criminal investigation. 18 U.S.C. § 2516. To intercept communications between private persons, law enforcement officers must apply for authorization from a federal judge. *Id.* The judge may enter an ex parte order authorizing the interception of "wire, oral, or electronic communications within the territorial jurisdiction of the court in which the judge is sitting (and outside that jurisdiction but within the United States in the case of a mobile interception device authorized by a Federal court within such jurisdiction) . . . ." *Id.* § 2518(3). This court has stated that "interception includes both the location of a tapped telephone and the original listening post, and that judges in either jurisdiction have authority under Title III to issue wiretap orders." *United States v. Denman*, 100 F.3d 399, 403 (5th Cir. 1996).

No. 11-60763

We interpret the above authorities to mean that, except in the case of a mobile interception device, a district court cannot authorize interception of cell phone calls when neither the phone nor the listening post is present within the court's territorial jurisdiction. This, however, is exactly what the district court did in this case. The order authorizing the wiretap provided that "in the event that TARGET TELEPHONE 4 is transferred outside the territorial jurisdiction of this Court, interceptions may take place in any other jurisdiction within the United States." Furthermore, the district court did not require that the listening post remain within its territorial jurisdiction, and the affidavit accompanying the government's application for a wiretap explicitly stated that the listening post would be located in Louisiana. In short, the district court, located in the Southern District of Mississippi, lacked the authority to permit interception of cell phone calls from Texas at a listening post in Louisiana.

The government argues that the district court's order was proper because it involved a "mobile interception device." This court has not yet determined what "mobile interception device" means. In *United States v. Ramirez*, 112 F.3d 849 (7th Cir. 1997), the Seventh Circuit was tasked with determining whether a district court in Wisconsin had the authority to issue a warrant to intercept calls on a Minnesota cell phone being listened to at a post in Minnesota. The court first looked to the legislative history of § 2518(3), which states that the term "mobile interception device" "applies to both a listening device installed in a vehicle and to a tap placed on a cellular or other telephone instrument installed in a v ehicle." 112 F.3d at 852 (quoting S. Rep. No. 541, at 30 (1986)). Rejecting a literal interpretation of the phrase "mobile interception device," the court found that the "emphasis in 'mobile interception device' falls . . . on the mobility of what is intercepted rather than on the irrelevant mobility or stationarity of the device." *Id*. at 853. The court concluded that "[t]he term in context means a device for intercepting mobile communications," and held that

5

No. 11-60763

when the device being intercepted is mobile, a judge may issue a wiretap warrant on that device "regardless of where the phone or the listening post" is located. *Id.*

We disagree that Congress intended to expand the scope of a district court's authority to issue wiretap warrants in any jurisdiction in the United States when the device to be intercepted a cell phone. Generally, the plain meaning of a statute controls unless the literal interpretation produces a result demonstrably at odds with the legislative intent. *See United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989); *New Orleans Depot Servs., Inc. v. Dir., Office of Worker's Comp. Programs*, —F.3d—, 2013 WL 1798608, at *7 (5th Cir. Apr. 29 2013) (en banc) ("[T]he first rule of statutory construction is that we may not ignore the plain language of a statute."). "Mobile" modifies "device," thus the phrase "mobile interception device" on its face appears to refer to the mobility of the device used to intercept communications, not the mobility of the tapped phone. We decline to interpret the statute in any way that eliminates important provisions regarding territorial restrictions in the case of cell phones, particularly when such an interpretation is not obvious from the statutory language.[1]

---

[1] We recognize that this holding yields a strange result in this case. Although the Mississippi district court judge did not have territorial jurisdiction under the statute, he arguably was in the best position to balance privacy concerns with the appropriateness of interception. *See* United States Department of Justice Electronic Surveillance Manual, DOJML Comment § 9-7.000 (instructing that when requesting interception of a cellular or mobile telephone, "[t]he order should specifically authorize such extra-jurisdictional interceptions, and *should be sought in the jurisdiction having the strongest investigative nexus to the object in which the monitoring device is installed*") (emphasis added). However, we are bound to apply the law as it written. *See United States v. Guidry*, 456 F.3d 493, 501-02 (5th Cir. 2006) ("When the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" (quoting *Caminetti v. United States,* 242 U.S. 470, 485 (1917))). It is for the United States Congress to determine whether, in light of technological advances, the statute should be amended. *See Caminetti* 242 U.S. at 490 ("If the words are plain, they give meaning to the act, and it is neither the duty nor the privilege of the courts to enter speculative fields in search of a different meaning.")

No. 11-60763

The government has not offered any evidence showing that North's cell phone communications were intercepted using a device that was itself mobile. Accordingly, we find the "mobile interception device" clause inapplicable.

**B.**

As explained above, the district court lacked authority to permit the interception of cell phone calls from Texas at a listening post in Louisiana. Title III provides that interception of a wire communication may be suppressed if "the order of authorization or approval under which it was intercepted is insufficient on its face." 18 U.S.C. § 2518(10)(a)(ii).  However, not every failure to comply with Title III's statutory requirements mandates suppression. Suppression is required "only for a 'failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device.'" *United States v. Donovan*, 429 U.S. 413, 433-34 (1977) (quoting *United States v. Giordano*, 416 U.S. 505, 527 (1974)).

North urges this court to find that the district court's lack of territorial jurisdiction "is not a mere 'technical defect' but is in fact a central and functional safeguard underlying [Title III]." The government argues that suppression is not warranted because the territorial jurisdiction requirement was not among Congress's core concerns when enacting Title III.  The district court held that territorial jurisdiction was not a central or functional safeguard in the statutory scheme.

The purpose of Title III "was effectively to prohibit, on the pain of criminal and civil penalties, all interceptions of oral and wire communications, except those specifically provided for in the Act, most notably those interceptions permitted to law enforcement officers when authorized by court order in connection with the investigation of the serious crimes listed in § 2516." *Giordano*, 416 U.S. at 514 (footnote omitted). "Title III has as its dual purpose

No. 11-60763

(1) protecting the privacy of wire and oral communications, and (2) delineating on a uniform basis the circumstances and conditions under which the interception of wire and oral communications may be authorized." *Adams v. Lankford*, 788 F.2d 1493, 1498 (11th Cir. 1986) (quoting S. Rep. No. 1097).

Other courts have determined that the territorial jurisdiction limitation in Title III does not "directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device." *See, e.g., Lankford*, 788 F.2d at 1500; *United States v. Rodriguez*, 734 F. Supp. 116, 120 (S.D.N.Y. 1990) *aff'd*, 968 F.2d 130 (2d Cir. 1992).  In *Lankford*, a case dealing with wiretaps authorized by a state court judge, the Eleventh Circuit court found that the legislative history was silent regarding the core concerns of Title III and the requirement that a judge authorize interceptions within the court's territorial jurisdiction. 788 F.2d at 1498. Further, the court found that because the territorial jurisdiction of a state court is subject to state determination, and Congress gave no indication of a desire to counter this uncertainty by defining "territorial jurisdiction" for purposes of wiretapping, Congress did not consider this geographical limitation a core concern. *Id*. at 1499-1500.

We disagree and find that the territorial jurisdiction limitation serves important substantive interests and implicates core concerns of the statute, despite the lack of legislative history. In *Giordano*, the Supreme Court held that a provision requiring a Department of Justice official to authorize an application for a wiretap was "intended to play a central role in the statutory scheme," because the requirement substantively limited the use of wiretaps. 416 U.S. at 527-28. "[S]uch a precondition would inevitably foreclose resort to wiretapping in various situations where investigative personnel would otherwise seek intercept authority from the court and the court would very likely authorize its use." *Id*. at 528. Title III's territorial restrictions prevent forum manipulation by

8

law enforcement, similarly preventing wiretap authorizations in cases where investigators would otherwise be able to obtain them. Limiting the number of district judges authorized to issue a wiretap warrant reduces the opportunity for the government to use forum manipulation to obtain a warrant that may not be approved elsewhere. We fail to see how this is not a significant protection of privacy. Territorial limitations on a district court directly implicate Congress's intent to guard against the unwarranted use of wiretapping.

## C.

North further argues that the government's applications for authorizations contained material misrepresentations and omissions, which undermine the government's required showings of necessity to resort to wiretaps as an investigative tool.

Whether an affidavit used to secure a Title III wiretap authorization contains "intentional or reckless" misrepresentations or omissions is a factual determination reviewed for clear error. *See United States v. Tomblin*, 46 F.3d 1369, 1376-77 (5th Cir. 1995) (citing *United States v. Williams*, 737 F.2d 594, 602 (7th Cir. 1984) (citations omitted)). "Under the clearly erroneous standard, we may not reverse the district court's findings of fact unless the review of the relevant evidence leaves us with 'the definite and firm conviction that a mistake has been committed.'" *Broussard v. United States*, 989 F.2d 171, 178 (5th Cir. 1993) (per curiam) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). "A factual finding is not clearly erroneous as long as it is plausible in light of the record as a whole." *United States v. Jacquinot*, 258 F.3d 423, 427 (5th Cir. 2001) (per curiam) (citation omitted). A district court's ultimate determination that an adequate Title III necessity showing has been made is a legal conclusion we review de novo. *See United States v. Guerra-Marez*, 928 F.2d 665, 671 (5th Cir. 1991) (citation and footnote omitted).

Title III requires that each affidavit in support of an application for a wiretap contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). Nevertheless, "the purpose of § 2518(1)(c) is not to foreclose electronic surveillance until every other imaginable method of investigation has been unsuccessfully attempted." *United States v. Webster*, 734 F.2d 1048, 1055 (5th Cir. 1984). "Rather, the section is designed to inform the issuing judge of the difficulties involved in the use of conventional techniques and to insure that wiretapping is not resorted to in a situation in which traditional investigative techniques will suffice to expose crime." *Id.* This court is "reluctant to impose [our] hindsight upon law enforcement agencies." *Guerra-Marez*, 928 F.2d at 670. Therefore, an affidavit in support of a wiretap "need not establish that every other imaginable mode of investigation would be unsuccessful." *Id.* (internal quotation marks omitted). "Instead, we take a common sense view of the statements contained in the application to determine if the necessity requirement is satisfied." *Id.* (internal quotation marks omitted).

North argues that the evidence gathered from both his phone and Primer's phone should be suppressed because the wiretap applications and supporting affidavits failed to satisfy Title III's necessity requirement. First, North asserts that the applications for both wiretaps "failed the necessity requirement because Agent Gale's affidavits in support of the applications contained material misrepresentations and omissions, without which there was an insufficient showing of necessity for the wiretaps." Second, North maintains that "even if there were no misrepresentations or omissions, necessity was still lacking as the applications failed to present actual facts–as contrasted with boilerplate allegations that would be true in any large scale drug trafficking conspiracy–suggesting why alternative investigative techniques had not been

10

tried and/or would not likely have succeeded." The government contends that Agent Gale's affidavits did not contain any material misrepresentations or omissions. The government does not respond to North's "boilerplate allegations."

**i.**

We apply a two-step analysis to alleged misrepresentations and omissions. First, the criminal defendant must show that misrepresentations or omissions were knowingly or recklessly included in, or omitted from, the affidavit supporting the wiretap application. *Id.* The reviewing court may infer this intent if the affidavit misrepresented or omitted facts that were "clearly critical" to the finding of necessity. *Cf. United States v. Cronan*, 937 F.2d 163, 165 (5th Cir. 1991) (citation omitted). Second, once the criminal defendant makes this requisite showing, the court will reconstruct the affidavit by striking the misrepresentations and including the omissions. *See Guerra-Marez*, 928 F.2d at 670. Then, looking only to the reconstructed affidavit, the court will determine whether § 2518(1)(c)'s necessity requirement was satisfied. *See id.*

Here, North argues that the affidavit used to obtain the wiretap of Primer's phone contained "material misrepresentations and omissions made with reckless disregard for the truth." Specifically, he contends that Agent Gale's affidavit (1) failed to disclose that, by March 16, 2009, agents had determined that the truck driven by "Jack" was registered to Primer; and (2) failed to mention that, on that same day, agents had observed Lofton meet "Jack" in a Jackson parking lot. Additionally, North asserts that Agent Gale's statement in the affidavit, that a wire tap was "essential . . . in order to fully identify JACK," was a misrepresentation made with reckless disregard for the truth because agents could have used other means to reveal Primer's true identity.

No. 11-60763

The district court rejected these arguments.  We do the same, and hold that the district court did not clearly err by concluding that Agent Gale's affidavit did not contain intentional misrepresentations or omissions.

First, North does not identify anything in the record establishing that Agent Gale made his alleged misrepresentation or omissions intentionally. Therefore, North must infer intent by pointing to "clearly critical" misrepresented or omitted facts.  *See Cronan*, 937 F.2d at 165.  He fails to do so.

Concerning the alleged misrepresentation, North entirely decontextualizes the statement that he isolates from Agent Gale's affidavit.  Contrary to what North suggests, the affidavit did not merely state that a wiretap was essential to identifying "Jack."  Rather, the relevant portion of the affidavit stated:

> According to the investigation to date, LOFTON is a major drug distributor in Mississippi.  LOFTON works closely with JACK and LEDBETTER who are also major cocaine distributors in Mississippi.  Accordingly, it is essential to intercept wire communications over TARGET PHONE 3 in order to fully identify JACK and obtain a clear understanding of the drug trafficking activities of JACK and others, as well as to have the best opportunity to identify all of the importation, transportation, and distribution routes and the persons that are participating in and facilitating the criminal activities of the distribution groups.

Given the broad scope of the government's investigation, which extended to "all of the importation, transportation, and distribution routes and the persons that [were] participating in and facilitating the criminal activities of the distribution groups," we simply cannot say that the "essential . . . in order to fully identify JACK" language in the affidavit was "clearly critical" to establishing the government's need to wiretap Primer's phone.  For similar reasons, we also cannot say that the omitted information concerning Primer's identity was "clearly critical."  Accordingly, the district court did not clearly err

12

No. 11-60763

by rejecting North's argument that Agent Gale's affidavit contained material misrepresentations and omissions as to the wiretap of Primer's phone.[2]

**ii.**

As stated above, Title III's necessity requirement mandates that each application for an order authorizing a wiretap contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."  18 U.S.C. § 2518(1)(c).

The Supreme Court has recognized that § 2518(1)(c) "is simply designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime."  *United States v. Kahn*, 415 U.S. 143, 153 n.12 (1974).  "While the government's burden is not great, it still may not make the required showing through a mere boilerplate recitation of the difficulties of gathering usable evidence."  *United States v. Oriakhi*, 57 F.3d 1290, 1298 (4th Cir. 1995) (internal quotation marks omitted). "Rather, the government must base its need on real facts and must specifically describe how, in the case at hand, it has encountered difficulties in penetrating [the] criminal enterprise or in gathering evidence with normal techniques to the point . . . where wiretapping becomes reasonable."  *Id*. (internal quotations marks and citations omitted) (alterations in original).  In the absence of Circuit precedent on this point, distinguishing between "mere boilerplate recitation" and "real" case-specific facts for the purposes of satisfying the government's § 2518(1)(c) necessity showing, we hereby adopt the Fourth Circuit's well-reasoned approach from *Oriakhi*.

---

[2] Because the district court did not clearly err by concluding that Agent Gale's affidavit in support of the wiretap of Primer's phone did not contain intentional misrepresentations or omissions, we need not reconstruct the affidavit in accordance with the second step of the *Guerra-Marez* framework.  *See* 928 F.2d at 670.

No. 11-60763

Here, North maintains that Agent Gale's affidavit in support of the government's application to wiretap Primer's phone did not satisfy Title III's § 2518(1)(c) necessity requirement because it lacked "real" case-specific facts. According to North, the affidavit was defective because it contained mere boilerplate generalities applicable to any large-scale drug trafficking investigation. This position is not persuasive. Agent Gale's affidavit contained some language that could be read as boilerplate. However, the boilerplate language was not in isolation. Agent Gale also described case-specific details concerning the investigation as a whole, the agents' use of confidential informants, and the information agents previously had gathered from physical surveillance. These "real facts" informed the district court of the case-specific limitations of conventional investigative techniques, and demonstrated that agents did not resort to wiretapping in a situation where conventional techniques would have sufficed. Taking a "common sense view" of the facts in Agent Gale's affidavit, we conclude that those facts were enough to satisfy Title III's necessity requirement. *See Guerra-Marez*, 928 F.2d at 670 (internal quotation marks omitted).

The district court did not clearly err by finding that the affidavit used to obtain the wiretap of Primer's phone did not contain intentional misrepresentations or omissions. Additionally, the district court's ultimate necessity determination as to the wiretap of Primer's phone was correct because Agent Gale provided real case-specific facts in his affidavit in support of the authorization. Accordingly, we affirm the district court's denial of North's motion to suppress as it relates to the wiretap of Primer's phone.

### iii.

Similar to his contentions concerning the wiretap of Primer's phone, North argues that Agent Gale's affidavit supporting the wiretap of his phone contained "material misrepresentations and omissions made with reckless disregard for

14

the truth." Specifically, North maintains that the affidavit failed to mention that agents knew North had rented the blue Ford Explorer with Texas plates, which they had observed on March 28, 2009. North also asserts that the affidavit omitted the fact that agents already had a physical description of North, in addition to his Houston address.

The district court found these arguments unavailing. In its written opinion, the district court concluded that Agent Gale's affidavit "did not contain any intentional or reckless misrepresentations or falsehoods." We agree, and hold that the district court's conclusion was not clearly erroneous.

As with his challenge to the wiretap of Primer's phone, North does not identify anything in the record establishing that Agent Gale intentionally omitted information concerning agents' prior knowledge of North's identity. Moreover, it is not at all clear that Agent Gale's two alleged omissions were "clearly critical" to the government's necessity showing within the meaning of *Cronan*. *See* 937 F.2d at 165. The relevant portion of Agent Gale's affidavit stated:

> According to the investigation to date, PRIMER is a major drug distributor in Jackson, Mississippi. PRIMER works closely with LOFTON and FNU LNU a/k/a/ BILLY who are also major cocaine distributors in Mississippi. Accordingly, it is essential to intercept wire communications over TARGET TELEPHONE 4 in order to fully identify FNU LNU a/k/a/ BILLY and obtain a clear understanding of the drug trafficking activities of FNU LNU a/k/a BILLY and others, as well as to have the best opportunity to identify all of the importation, transportation, and distribution routes and the persons that are participating in and facilitating the criminal activities of the distribution groups.

Given the broad scope of the government's investigation, which extended to "all of the importation, transportation, and distribution routes and the persons that

No. 11-60763

[were] participating in and facilitating the criminal activities of the distribution groups," we cannot say that the omitted information concerning North's identity was "clearly critical." Accordingly, the district court did not clearly err by rejecting this portion of North's necessity argument as to the wiretap of his phone.[3]

**iv.**

As discussed above, a supporting affidavit must provide "real" case-specific facts, rather than "mere boilerplate recitation," to satisfy § 2518(1)(c)'s requirement of necessity for a wiretap. *See Oriakhi*, 57 F.3d at 1298. Here, North asserts that Agent Gale's affidavit, which he used to obtain the authorization to wiretap North's phone, lacked the requisite case-specific details. To North, the affidavit was deficient because it contained mere boilerplate generalities applicable to any large-scale drug trafficking investigation. We disagree.

Like Agent Gale's affidavit in support of the wiretap of Primer's phone, this affidavit appears to have contained some boilerplate language. However, as with the other affidavit, the boilerplate language was not in isolation. Agent Gale provided "real facts," which demonstrated to the district court that agents did not resort to wiretapping in a situation where conventional investigative techniques would have sufficed. Taking a "common sense view" of the facts in Agent Gale's affidavit, we conclude that those facts were enough to satisfy Title III's necessity requirement. *See Guerra-Marez*, 928 F.2d at 670 (internal quotation marks omitted),

---

[3] Because the district court did not clearly err by concluding that Agent Gale's affidavit in support of the wiretap of North's phone did not contain intentional misrepresentations or omissions, we need not reconstruct the affidavit in accordance with the second step of the *Guerra-Marez* framework. *See* 928 F.2d at 670.

No. 11-60763

The district court did not clearly err by finding that the affidavit used to obtain the wiretap of North's phone did not contain intentional misrepresentations or omissions. Additionally, the district court's ultimate necessity determination as to the wiretap of North's phone was correct because Agent Gale provided real case-specific facts in his affidavit in support of the authorization. Accordingly, we affirm the district court's denial of North's motion to suppress as it relates to the wiretap of his phone on these grounds.[4]

## IV.

Finally, North argues that the government failed to follow minimization protocols during interception of the May 16, 2009 phone call between North and a female friend who was not under investigation.

North was stopped for speeding on May 16, 2009. After three hours, he was released. Within minutes of his release, North called a female friend. The call lasted just over one hour. North argues that the evidence gathered as a result of the interception of his cellular phone should be suppressed because the agents listening in Metairie did not comply with minimization requirements. Specifically, North argues that listening agents conducted essentially uninterrupted monitoring of a conversation that had no objective connection to the drug smuggling investigation. The Government argues that he agents made reasonable minimization efforts, emphasizing that during the call North

---

[4] One additional point warrants mention. To support his argument that both wiretap affidavits contained mere boilerplate, North compares the affidavit that Agent Gale drafted to support the wiretap application for his phone with the affidavit Agent Gale drafted to support the application for Primer's phone. North argues that the textual similarities between the two affidavits establishes that neither was case-specific. This argument is unpersuasive for two reasons. First, the similarities between the two affidavits are not surprising. After all, both were used to obtain wiretaps relating to the same investigation and, thus, necessarily involved the same set of facts. Those similarities do not undermine the validity of either affidavit. Second, and more fundamentally, Title III does not require case agents to reinvent the wheel every time they draft affidavits. So long as an affidavit contains "real" case-specific facts, and both of Agent Gale's affidavits did, Title III's necessity requirement is satisfied.

complained about racial profiling and what occurred during the traffic stop; and that the conversation occurred immediately after North's car had been searched for drugs and the agents knew from other tapped conversations that drugs were concealed in the vehicle.

"This court reviews the district court's determination of the reasonableness of minimization efforts for clear error." *United States v. Brown*, 303 F.3d 582, 603 (5th Cir. 2002). "Under the clearly erroneous standard, we may not reverse the district court's findings of fact unless the review of the relevant evidence leaves us with 'the definite and firm conviction that a mistake has been committed.'" *Broussard v. United States*, 989 F.2d 171, 178 (5th Cir. 1993) (quoting *U.S. Gypsum*, 333 U.S. at 395). Electronic surveillance must "'be conducted in such a way as to minimize the interception of communications not otherwise subject to interception.'" *Brown*, 303 F.3d at 604 (quoting 18 U.S.C. § 2518(5)). To comply with § 2518(5), the "government's efforts to minimize interception of non-pertinent conversations must be objectively reasonable in light of the circumstances confronting the interceptor." *Id.* (internal quotation marks omitted). This court has set forth a three-part test to determine whether the government's minimization efforts were objectively reasonable: "'(1) the nature and scope of the criminal enterprise under investigation; (2) the Government's reasonable inferences of the character of a conversation from the parties to it; and (3) the extent of judicial supervision.'" *Id.* at 604 (quoting *United States v. Bankston*, 182 F.3d 296, 307 (5th Cir. 1999)).

The government contends, and the district court appears to have accepted the fact that, during the conversation, the listening agents stopped listening in on the call eight times, for a total of six minutes and seventeen seconds. However, we can find no evidence in the record to support the government's contention that the phone call was minimized. The record cite provided by the government does not speak to the minimization efforts made during the May 16,

2009 phone call. Because there is no evidence of minimization, the district court clearly erred in finding that the government's minimization attempts were objectively reasonable.

Even if the minimization did occur, we do not find the effort to have been objectively reasonable. The instructions provided to the agents "authorized spot monitoring for not more than two minutes, and authorized continued monitoring when the conversation relate[d] to the alleged crimes under investigation." The agents did not stop listening when it was made clear that the conversation was not criminal in nature and then conduct subsequent spot checks by "dropping in" to the conversation to check if it had turned to criminal matters. Rather, the agents listened to the conversation for several minutes, "dropping out" for less than one minute at a time before resuming their near continuous listening. Although the government asserts that the context supports continuous listening because North had been stopped on what the government believed to be a drug run, it seems just as likely that North's failure to immediately discuss his near miss during the conversation demonstrated that the phone call was not related to the drug crimes under investigation. Additionally, while North discussed the stop a various times during the first fifty minutes of the call, North reiterated throughout the conversation that he had been the victim of racial profiling, which falls outside the scope of the crimes being investigated. Moreover, North was not speaking to a member of the drug smuggling conspiracy. Until the very end of the conversation, nothing of the conversation was criminal in nature or referenced the smuggling activities. Under these circumstances, it was not objectively reasonable for agents to listen in for nearly one hour to a conversation that did not turn to criminal matters until the last few minutes. As such, the evidence obtained from the May 16, 2009 interception of North's cell phone must be suppressed.

No. 11-60763

## V.

For the foregoing reasons, we find that the district court did not have the requisite territorial jurisdiction and such non-compliance implicates a core concern of the statute and requires suppression of the evidence obtained from the wiretap. We further find that the government failed to comply with minimization protocols when monitoring North's May 16, 2009 phone call. We therefore REVERSE the district court's denial of North's motion to suppress and REMAND for further proceedings.