DeMOSS, Circuit Judge, specially
concurring:
I concur with the majority opinion. I write separately because I would have reached the issue of territorial jurisdiction and concluded that the district court *217 lacked the authority to permit interception of cell phone calls from Texas at a listening post in Louisiana for the following reasons.
Title III of the Omnibus Crime Control and Safe Streets Act of 1968. authorizes the use of. wiretap surveillance in the context of a criminal investigation. 18 U.S.C. § 2516. To intercept communications between private persons, law enforcement officers must apply for authorization from a federal judge. Id. The judge may enter an ex parte order authorizing the interception of “wire, oral, or electronic communications within the territorial jurisdiction of the court in which the judge is sitting (and outside that jurisdiction but within the United States in the case of a mobile interception device authorized by a Federal court within such jurisdiction)....” Id. § 2518(3). This court has stated that “interception includes both the location of a tapped telephone and the original listening post, and that judges in either jurisdiction have authority under Title III to issue wiretap orders.” United States v. Denman, 100 F.3d 399, 403 (5th Cir.1996).
I interpret the above authorities to mean that, except in the case of a mobile interception device, a district court cannot authorize interception of cell phone calls when neither the phone nor the listening post is present within the court’s territorial jurisdiction. This, however, is exactly what the district court did in this case. The order authorizing the wiretap provided that “in the event that TARGET TELEPHONE 4 is transferred outside the territorial jurisdiction of this Court, interceptions may take place in any other jurisdiction within the United States.” Furthermore, the district court did not require that the listening post remain within its territorial jurisdiction, and the affidavit accompanying the government’s application for a wiretap explicitly stated that the listening post would be located in Louisiana. In short, the district court, located in the Southern District of Mississippi, lacked the authority to permit interception of cell phone calls from Texas at a listening post in- Louisiana.
The government argues that the district court’s order was proper because it involved a “mobile interception device.” This court has not yet determined what “mobile interception device” means. In United States v. Ramirez, 112 F.3d 849 (7th Cir.1997), the Seventh Circuit was tasked with determining whether a district court in Wisconsin had the authority to issue a warrant to intercept calls on a Minnesota cell phone being listened to at a post in Minnesota. The court first looked to the legislative history of § 2518(3), which states that the term “mobile interception device” “applies to both a listening device installed in a vehicle and to a tap placed on a cellular or other telephone instrument installed in a vehicle.” 112 F.3d at 852 (quoting S.Rep. No. 541, at 30 (1986)). Rejecting a literal interpretation of the phrase “mobile interception device,” the court found that the “emphasis in ‘mobile interception device’ falls ... on the mobility of what is intercepted rather than on the irrelevant mobility or stationarity of the device.” Id. at 853. The court concluded that “[t]he term in context means a device for intercepting mobile communications,” and held that when the device being intercepted is mobile, a judge may issue a wiretap warrant on that device “regardless of where the phone or the listening post” is located. Id.
I disagree that Congress intended to expand the scope of a district court’s authority to issue wiretap warrants in any jurisdiction in the United States when the device to be intercepted a cell phone. Generally, the plain meaning of a statute controls unless the literal interpretation *218 produces a result demonstrably at odds with the legislative intent. See United States v. Ron Pair Enters., Inc., 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); New Orleans Depot Servs., Inc. v. Dir., Office of Worker’s Comp. Programs, 718 F.3d 384, 393 (5th Cir.2013) (en banc) (“[T]he first rule of statutory construction is that we may not ignore the plain language of a statute.”). “Mobile” modifies “device,” thus the phrase “mobile interception device” on its face appears to refer to the mobility of the device used to intercept communications, not the mobility of the tapped phone. We decline to interpret the statute in any way that eliminates important provisions regarding territorial restrictions in the case of cell phones, particularly when such an interpretation is not obvious from the statutory language.
The government has not offered any evidence showing that North’s cell phone communications were intercepted using a device that was itself mobile. Accordingly, we find the “mobile interception device” clause inapplicable. As explained above, the district court lacked authority to permit the interception of cell phone calls from Texas at a listening post in Louisiana. Title III provides that interception of a wire communication may be suppressed if “the order of authorization or approval under which it was intercepted is insufficient on its face.” 18 U.S.C. § 2518(10)(a)(ii). Not every failure to comply with Title Ill’s statutory requirements mandates suppression. Suppression is required “only for a ‘failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device.’ ” United States v. Donovan, 429 U.S. 413, 433-34, 97 S.Ct. 658, 50 L.Ed.2d 652 (1977) (quoting United States v. Giordano, 416 U.S. 505, 527, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974)).
North urges this court to find that the district court’s lack of territorial jurisdiction “is not a mere ‘technical defect’ but is in fact a central and functional safeguard underlying [Title III].” The government argues that suppression is not warranted because the territorial jurisdiction requirement was not among Congress’s core concerns when enacting Title III. The district court held that territorial jurisdiction was not a central or functional safeguard in the statutory scheme.
The purpose of Title III “was effectively to prohibit, on the pain of criminal and civil penalties, all interceptions of oral and wire communications, except those specifically provided for in the Act, most notably those interceptions permitted to law enforcement officers when authorized by court order in connection with the investigation of the serious crimes listed in § 2516.” Giordano, 416 U.S. at 514, 94 S.Ct. 1820 (footnote omitted). “Title III has as its dual purpose (1) protecting the privacy of wire and oral communications, and (2) delineating on a uniform basis the circumstances and conditions under which the interception of wire and oral communications may be authorized.” Adams v. Lankford, 788 F.2d 1493, 1498 (11th Cir.1986) (quoting S.Rep. No. 1097).
Other courts have determined that the territorial jurisdiction limitation in Title III does not “directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device.” See, e.g., Lankford, 788 F.2d at 1500; United States v. Rodriguez, 734 F.Supp. 116, 120 (S.D.N.Y.1990) aff'd, 968 F.2d 130 (2d Cir.1992). In Lankford, a case dealing with wiretaps authorized by a *219 state court judge, the Eleventh Circuit court found that the legislative history was silent regarding the core concerns of Title III and the requirement that a judge authorize interceptions within the court’s territorial jurisdiction. 788 F.2d at 1498. Further, the court found that because the territorial jurisdiction of a state court is subject to state determination, and Congress gave no indication of a desire to counter this uncertainty by defining “territorial jurisdiction” for purposes of wiretapping, Congress did not consider this geographical limitation a core concern. . Id. at 1499-1500.
I disagree and think that the territorial jurisdiction limitation serves important substantive interests and implicates core concerns of the statute, despite the lack of legislative history. In Giordano, the Supreme Court held that a provision requiring a Department of Justice official to authorize an application for a wiretap was “intended to play a central role in the statutory scheme,” because the requirement substantively limited the use of wiretaps. 416 U.S. at 527-28, 94 S.Ct. 1820. “[Sjuch a precondition would inevitably foreclose resort to wiretapping in various situations where .investigative personnel would otherwise seek intercept authority from the court and the court would very likely authorize its use.” Id. at 528, 94 S.Ct. 1820. Title Ill’s territorial restrictions prevent forum manipulation by law enforcement, similarly preventing wiretap authorizations in cases where investigators would otherwise be able to obtain them. Limiting the number of district judges authorized to issue a wiretap warrant reduces the opportunity for the government to use forum manipulation to obtain a warrant that may not be approved elsewhere. We fail to see how this is not a significant protection of privacy.' Territorial limitations on a district court directly implicate Congress’s intent to guard against the unwarranted use of wiretapping.
Although application of the plain language may create a circuit split and potentially reduce the efficiency of the government to intercept communications from any available listening post, this is not a reason for our court to apply the law in contravention of the plain language of the statute. The language of the statute is clear and must be applied as written.[1]

. I recognize that this holding yields a strange result in this case. Although the Mississippi district court judge did not have territorial jurisdiction under the statute, he arguably was in 'the best position to balance privacy concerns with the appropriateness of interception. See United States Department. of Justice Electronic Surveillance Manual, DOJML Comment § 9-7.000 (instructing that when requesting interception of a cellular or mobile telephone, "[t]he order should specifically authorize such extra-jurisdictional interceptions, and ‘should, be sought in the jurisdiction having the strongest investigative nexus to the object in which the monitoring device is installed ”) (emphasis added). However, we are bound to apply the law as it written. See United States v. Guidry, 456 F.3d 493, 501-02 (5th Cir.2006) (“When the statute’s language is plain, 'the sole function of the courts is to enforce it according to its terms.’ ” (quoting Caminetti v. United States, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917))). It is for the United States Congress to determine whether, in light of technological advances, the statute should be amended. See Caminetti, 242 U.S. at 490, 37 S.Ct. 192 ("If the words are plain, they give meaning to the act, and it is neither the duty nor the privilege of the courts to enter speculative fields in search of a different meaning.”)